**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly R. Sweidy, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Spring Ridge Academy, et al., ) <br> ) <br> Defendants. ) <br> ) | No. CV-21-08013-PHX-SPL <br><br> **ORDER** |

Before the Court are two separate discovery disputes. In the first dispute, Defendants seek an order from this Court directing Plaintiff Kimberly R. Sweidy ("Plaintiff") to sign authorizations for the release of certain therapy records. (Doc. 78 at 3). In the second dispute, Plaintiff seeks an order compelling Defendants to disclose (i) all communications and documents associated with workshops that Plaintiff and/or her daughter were contracted to attend at Spring Ridge Academy ("SRA") and (ii) certain email communications exchanged between Defendants and other SRA employees in February, April, and June 2020. (Doc. 96 at 2, 6).

The *first* discovery dispute was brought to the Court's attention on October 27, 2022 when the parties filed a Joint Motion for Discovery Dispute Resolution (Doc. 78). On November 17, 2022, the Court issued an Order (Doc. 84) partially resolving this first dispute and setting a Hearing for December 7, 2022 to resolve the remaining issues. On November 24, 2022, however, the parties raised a *second* discovery dispute to the Court (Doc. 85). On December 2, 2022, the Court vacated the December 7, 2022 Hearing and

reset the Hearing for January 6, 2023. (Doc. 90 at 3). The Court ordered the parties to meet and confer with the goal of narrowing or resolving the second discovery dispute. (*Id.*). The parties did so and filed a Joint Notice (Doc. 106) detailing their meet-and-confer efforts. The Court's December 2, 2022 Order also directed the parties to fully brief the second discovery dispute. (Doc. 90 at 4). On December 9, 2022, Plaintiff filed a Motion to Compel Production of Documents (Doc. 96), which explained Plaintiff's side of the second discovery dispute in greater depth. Plaintiff's Motion to Compel has been fully briefed and is ready for review. (Docs. 96, 102 & 104). On January 6, 2023, the parties appeared before the Court for the Hearing and made arguments with respect to both pending discovery disputes. (Doc. 108). Having fully reviewed and considered the parties' briefing, the parties' arguments at the Hearing, and the entire record in this matter, the Court now issues this Order resolving both discovery disputes.

## I.     BACKGROUND

Plaintiff brings this suit against Defendant SRA and eight of its individual employees (collectively, "Defendants"). (Doc. 1 at 1). Plaintiff's claims arise out of her daughter's enrollment at SRA, an all-girls boarding school in Mayer, Arizona. (*Id.* at 3–4). Her daughter was enrolled at SRA on December 13, 2019, approximately two years after the divorce of her parents, Plaintiff and non-party Raymond Stata. (*Id.* at 2, 4). Aside from a nine-day period in February 2020—during which Plaintiff temporarily removed her daughter from SRA—Plaintiff's daughter remained at SRA until June 28, 2020. (*Id.* at 35–36, 39, 69).

Plaintiff alleges that SRA uses a scheme of false advertising and a nationwide network of educational consultants to recruit vulnerable children and parents. (*Id.* at 14). Plaintiff alleges that the SRA program involves seminars, workshops, and residential living conditions that are designed to control and humiliate the students and to destroy their relationships with their parents. (*Id.*). Plaintiff alleges that Defendants interfered with and destroyed her relationship with her own daughter. (*Id.*). Plaintiff asserts numerous claims against Defendants, including breach of contract, negligence, intentional infliction of

emotional distress, conversion, RICO violations, and fraud. (*Id.* at 95–123).

## II. LEGAL STANDARD

The purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible," *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958), and "to narrow and clarify the basic issues [in dispute] between the parties." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947); *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) ("[T]he whole point of discovery is to learn what a party does not know or, without further information, cannot prove."); *Pac. Fisheries Inc. v. United States*, 484 F.3d 1103, 1111 (9th Cir. 2007) ("[T]he purpose of discovery is to aid a party in the preparation of its case."). Necessarily, the scope of discovery is generally very broad. Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Rule 37(a)(3) of the Federal Rules of Civil Procedure provides that a party may seek to compel discovery disclosures or responses if the party to whom the discovery requests were propounded fails to properly disclose or respond. A failure to disclose or respond *includes* evasive or incomplete answers. Fed. R. Civ. P. 37(a)(4). "[T]he party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)." *Doe v. Swift Transp. Co., Inc.*, No. 2:10-cv-00899 JWS, 2015 WL 4307800, at *1 (D. Ariz. July 15, 2015). This is "a relatively low bar," *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020), as relevance in the discovery context is "defined very broadly." *EEOC v. Scottsdale Healthcare Hosps.*, No. CV-20-01894-PHX-MTL, 2021 WL 4522284, at *2 (D. Ariz. Oct. 4, 2021) (quoting *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998)); *see also Cont'l Cirs.*, 435 F. Supp. 3d at 1018–19 (citation and internal quotations omitted) ("[C]ourts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes

of trial."). Under Rule 401 of the Federal Rules of Evidence, information having "any tendency" to make a fact in dispute "more or less probable" is relevant. Fed. R. Evid. 401. If the movant meets its burden of establishing relevancy, "the party opposing discovery has the burden to demonstrate that discovery should not be allowed due to burden or cost and must explain and support its objections with competent evidence." *Doe*, 2015 WL 4307800, at *1.

### III. DISCUSSION

The Court will address each of the two pending discovery disputes in turn.

### A. First Discovery Dispute

Defendants request that the Court order Plaintiff to sign authorizations for the release of records from two therapists Plaintiff included in her spreadsheet of "Therapist Damages" (Doc. 78-1 at 17): Dr. Sarah Villarreal and Mr. Gregory Ross. (Doc. 78 at 2). As explained below, the Court grants Defendants' request with respect to records from Mr. Ross but denies their request with respect to Dr. Villarreal.

To start, the Court will *not* order Plaintiff to sign authorizations to release records from Dr. Villarreal. Throughout this dispute—in communications with the Court and in those communications between the parties made available for the Court's review—Plaintiff has consistently maintained that Dr. Villarreal was never Plaintiff's therapist and that records from Dr. Villarreal would therefore not contain any information relevant to Plaintiff's own emotional or mental health condition. Plaintiff's steadfast position on this issue is underscored by the fact that she only seeks damages reimbursing her for a single Dr. Villarreal-related expense: her February 27, 2020 meeting with Dr. Villarreal. As Plaintiff has explained, this meeting occurred only after Plaintiff received a letter from Defendants on February 25, 2020 limiting her communications with her daughter. Plaintiff reached out to Dr. Villarreal to update her on what had happened and to obtain a letter "regarding [her daughter's] actual diagnoses (versus the 'One Size Fits All' Master Treatment Plan produced by Defendant [])." (Doc. 106-2 at 22). Defendants have not persuaded the Court that records from Dr. Villarreal would contain any information

relevant to Plaintiff's emotional or mental health. Therefore, the Court does not find such records to be discoverable by Defendants. To the extent Defendants may dispute their liability for the cost of Plaintiff's February 27, 2020 meeting with Dr. Villarreal, they will have ample opportunity to make such an argument at a later stage in this case.

The Court *will* order Plaintiff to sign authorizations for the release of records from Mr. Ross. Unlike Dr. Villarreal, Plaintiff acknowledges that she *herself* received therapy from Mr. Ross in the form of family law court-ordered "reconnection therapy." (Doc. 78 at 4). Given that the Ross sessions took place *after* Plaintiff's daughter left SRA—all occurred between August 11, 2020 and October 5, 2020, (*see* Doc. 78-1 at 17)—it is therefore reasonable that the records for such sessions would contain information relevant to issues that are central to Plaintiff's case against Defendants: Plaintiff's emotional and mental condition and Plaintiff's relationship with her daughter. The Court finds that the Ross records therefore meet the "relatively low bar" for relevancy in the discovery context. *See Cont'l Cirs. LLC*, 435 F. Supp. 3d at 1018.

Plaintiff's only meaningful argument against the release of the Ross records is that Plaintiff is not authorized to release the records to the extent they contain confidential medical information about her daughter, who is not a party to this action. The Court recognizes this concern. The Ross records likely contain sensitive or confidential medical information relating to Plaintiff's daughter because Mr. Ross, in his role as a "reconnection therapist," was simultaneously acting as a therapist for both Plaintiff *and* her daughter. That said, the Court finds that Plaintiff's concerns are both misplaced and premature for purposes of the present dispute. Defendants only request that the Court order Plaintiff to sign authorizations for the release of the Ross records. The Court grants this request. Plaintiff is ordered to sign the necessary authorizations for the release of therapy records from Mr. Ross. To the extent those records contain confidential medical information concerning Plaintiff's daughter, the Court notes that it is not ordering Plaintiff's daughter to consent to disclosure, nor is it ordering Mr. Ross to actually produce the records to Defendants. Defendants must still take the appropriate steps to obtain the records from Mr.

Ross, considering that the records apparently pertain to *two* patients and thereby implicate the medical confidentiality interests of two separate individuals. At bottom, the Court finds that records related to Plaintiff's therapy sessions with Mr. Ross likely contain relevant, discoverable information. Therefore, Defendants are justified in seeking Plaintiff's signature authorizing the release of such records.

### B. Second Discovery Dispute

The parties' second discovery dispute concerns two separate discovery items sought by Plaintiff. First, Plaintiff requests "all communications and documents" related to the "workshops" attended by Plaintiff, her daughter, and/or her ex-husband. (Doc. 96 at 2). Second, Plaintiff requests production of a note and certain emails withheld as work product by Defendants. (*Id.* at 6).

#### *i.     Documents and Communications Related to SRA Workshops*

Plaintiff identifies at least five distinct workshops that were components of the SRA program: Teen Challenge Workshop, Parent Challenge Workshop, Family Workshop I, Family Workshop II, and Action Workshop. (Doc. 96 at 2). Plaintiff contends that the workshops lie at the heart of her lawsuit, as it was through these workshops that Defendants used abusive and manipulative tactics to harm her relationship with her daughter. Thus, Plaintiff seeks discovery of "all documentation regarding every component of SRA's program, including, but not limited to, all handouts for every Workshop that Plaintiff and/or her daughter were contracted to attend, regardless of whether either Plaintiff and/or her daughter actually attended that Workshop, as well as all handwritten logs memorializing those Workshops." (*Id.* at 5).

Part of Plaintiff's case against Defendants involves her allegations that the workshops were fraudulently portrayed as "therapy" when they are, in fact, *not* therapy. In responding to Plaintiff's Motion to Compel, Defendants go to great lengths to explain that the workshops were never intended to be therapy and that they were never portrayed as such to Plaintiff or to any other parents of potential students. (Doc. 102 at 2–6). Thus, Defendants contend, any documents or communications related to the workshops are

irrelevant to Plaintiff's fraud claims.

The Court is not persuaded by Defendants' argument. Even *assuming* that the workshops were never intended to be therapy and that they were never portrayed as such to prospective parents, the fact remains that the workshops are a central part of the SRA program that Plaintiff's entire case is centered around. Plaintiff's claims against Defendants relate to the activities and experiences SRA required its students and parents to participate in and what impact those activities and experiences had on her and her relationship with her daughter. Given that the workshops were a central component of the activities and experiences included in the SRA program, documents and communications related to the workshops are undoubtedly relevant. Defendants' argument with respect to the validity of Plaintiff's fraud claims overlooks the *other* claims she brings, such as her negligence claim and her claim for intentional infliction of emotional distress. Even if the workshops are not relevant to Plaintiff's fraud claims, the workshops are certainly relevant to these other claims, and the documents and communications underlying the workshops are therefore discoverable. As to the possibility that such workshop-related discovery may contain proprietary information, Defendants failed to meaningfully make such an argument in their Response. When asked at the Hearing how this discovery would harm Defendants, Defendants made only a brief, cursory argument concerning the discovery's proprietary value and asserted that Defendants would seek additional protections from the Court—*e.g.*, a protective order—if they were ordered to produce the documents. The parties are more than welcome to meet, confer, and propose a protective order to the Court. For purposes of this Motion, however, the Court finds that documents and communications pertaining to the SRA workshops are relevant and discoverable by Plaintiff, and that Defendants shall be ordered to produce such discovery.

### ii. *Emails Designated as Work Product*

On November 23, 2022, Defendants submitted to Plaintiff a "Privilege Log" that listed, pursuant to Federal Rule of Civil Procedure 26(b)(5), seven documents that Defendants are withholding as work product because they were prepared in anticipation of

litigation. (Doc. 96-1 at 6–7). Plaintiff seeks production of all seven documents, arguing that they were prepared for business purposes and not "in anticipation of litigation" and that the documents therefore cannot be withheld as work product.

As an initial matter, the parties' briefing appears to, at times, conflate the work-product doctrine with the attorney-client privilege. The two concepts are, however, distinct:

> The work product privilege is very different from the attorney-client privilege. The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties. The work product privilege, however, does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent.

*Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 383–84 (D. Ariz. 2010) (quoting *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989)); *see also Salvation Army v. Bryson*, 229 Ariz. 204, 207 (Ct. App. 2012) ("[The attorney-client privilege and work-product doctrine] are distinct and often pertain to different subjects, and their application to the same material may produce different results with respect to disclosure."). Here, Defendants do not rely on the attorney-client privilege with respect to the seven documents at issue. Rather, Defendants clearly implicate the work-product doctrine in their Privilege Log by asserting that the seven documents are protected because they were prepared "in anticipation of litigation." (Doc. 78-1 at 6–7). Moreover, when asked about the issue at the Hearing, Defendants made it clear that their reliance is on the work-product doctrine and not on the attorney-client privilege.

Federal law, not state law, governs the application of the work product doctrine. *See Bickler*, 266 F.R.D. at 382 (listing cases) ("Unlike the attorney-client privilege, federal law governs the application of the work product doctrine in this case."); *see also City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. CV-12-380-PHX-BSB, 2013 WL 1797308, at *11 (D. Ariz. Apr. 29, 2013) ("Because the work product doctrine is a limitation on discovery, and not an evidentiary privilege, federal law governs its

application."). The work-product doctrine "is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct. for the Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)). "Rule 26(b)(3) states that otherwise protected materials may be discoverable if a party 'shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *United Specialty Ins. Co. v. Dorn Homes Inc.*, 334 F.R.D. 542, 544 (D. Ariz. 2020) (quoting Fed. R. Civ. P. 26(b)(3)). "Because application of the [work-product doctrine] 'can derogate from the search for the truth,' it is narrowly construed and the party invoking the doctrine 'bears the burden of establishing all the elements that trigger the protection; doubts must be resolved against the party asserting the privilege.'" *Evanston Ins. Co. v. Murphy*, No. CV-19-04954-PHX-MTL, 2020 WL 4429022, at *2 (D. Ariz. July 31, 2020) (quoting *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 22 (N.D. Cal. 1985)). "If the party seeking protection meets their initial burden, the party seeking discovery then carries the burden that an exception or waiver applies." *Id.* (citation omitted).

"To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004)). "Litigation need not be a certainty for work product protection to arise." *Bickler*, 266 F.R.D. at 383. "In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *Richey*, 632 F.3d at 567–68 (citing *In re Grand Jury Subpoena*, 357 F.3d at 907). "Dual purpose documents are deemed prepared because of litigation if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly said to have been prepared or obtained because of the prospect of litigation.'" *Id.* (citing *In re Grand Jury Subpoena*, 357 F.3d at 907). "In applying the 'because of'

standard, courts must consider the totality of the circumstances and determine whether the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'" *Id.* (citing *In re Grand Jury Subpoena*, 357 F.3d at 908).

Four of the seven documents at issue consist of a note and three email communications that were exchanged between Defendants and other SRA employees on February 11–13, 2020. (*Id.*). Two of the documents consist of email communications exchanged in April 2020. (*Id.*). The final document is a June 11, 2020 email between Defendants and other non-party SRA employees. (*Id.*). The Court first notes that all these documents meet the second requirement to qualify for work-product protection—that is, all seven documents were "created by or for another party or by or for that other party's representative" because all seven documents were created by individuals who are named as Defendants in this matter. Thus, the only question is whether the documents were prepared in anticipation of litigation or for trial. The Court will address each of the document categories in turn and, having fully considered the parties' arguments and having conducted an *in-camera* review of each of the at-issue documents, holds as follows.

### a. *February 2020 Note and Emails*

As relevant background, on February 3, 2020, Plaintiff removed her daughter from SRA. On February 12, 2020, Plaintiff's daughter was returned to SRA pursuant to a California family law court order. On February 25, 2020, Defendants sent an electronic letter to Plaintiff stating, among other things, that SRA would no longer provide therapeutic services involving Plaintiff and that Plaintiff would only be allowed to communicate with her daughter via written and telephonic communications monitored by SRA. The February 2020 note and emails presently at issue concerned the return of Plaintiff's daughter to SRA and Defendants' drafting of the letter.

First, the Court finds that the "February 11, 2020 Suzie Courtney Note" *was* prepared in anticipation of litigation. Unlike the February 2020 emails—discussed below—the note does not directly relate to Defendants' drafting of the February 25, 2020

letter to Plaintiff. Without revealing the note's contents, the Court finds that the note contains language documenting certain actions taken by Defendants that suggest that Defendants were anticipating litigation. In the absence of a litigation threat, it is unclear why the note would have been created because it does not document routine, day-to-day business but rather actions taken by Defendants in response to Plaintiff's conduct. Moreover, the timing of the note—being created on February 11, 2020, just before the return of Plaintiff's daughter to SRA—additionally supports a finding that the note was prepared with potential litigation in mind. Indeed, as Defendants note in their Response, Plaintiff *herself* has indicated that "as of February 3, 2020, at the latest, [Defendants] should have reasonably anticipated this litigation and [their] duty to preserve." (Doc. 102 at 8). The Court finds that the "February 11, 2020 Suzie Courtney Note" is protected under the work-product doctrine and need not be disclosed to Plaintiff.

Conversely, however, the Court finds that Defendants have failed to establish that the February 2020 emails were prepared in anticipation of litigation such that the emails are entitled to work-product protection. The Court's *in-camera* review of the emails reveals that they were drafted for the purpose of exchanging edits and suggesting changes to the February 25, 2020 letter to Plaintiff, not to prepare for impending litigation against Plaintiff. The very purpose of the letter was to outline the protocol for how SRA would be interacting with Plaintiff going forward and to notify Plaintiff accordingly, so it is difficult to say that the emails exchanged while *drafting* said letter were written with the purpose of litigation in mind any more than they were written with the purpose of simply moving forward with the business of SRA. To some extent, the fact that SRA had never before drafted anything like the February 25, 2020 letter is some evidence that Defendants were acting outside the scope of ordinary business. However, Defendants also indicated at the Hearing that they had never had a parent show up at SRA accompanied by officers to remove their child from the school either, a course of events that would presumably call for unprecedented action on the part of SRA. Thus, the drafting of the letter—and the emails exchanged in the process—remain within the scope of carrying out the everyday

business of SRA, even if the letter was not something SRA typically had to do. Ultimately, the question is whether the document "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568. Here, with respect to the February 2020 emails, the Court finds that they *would* have been created regardless of any prospect of litigation because SRA—facing the unique factual circumstances posed by the removal and return of Plaintiff's daughter from the program—had to fashion a new protocol for how it would move forward with Plaintiff and her daughter. The Court finds that the February 2020 emails are *not* protected under the work-product doctrine and will order their disclosure to Plaintiff.

### b. April 2020 Emails

On April 7, 2020, Plaintiff sent an email to Defendants expressing her disapproval of an Academic Plan for her daughter that had been sent to her by Defendants on April 6, 2020. (Doc. 96-1 at 43–45). In the email, Plaintiff demands that, within 48 hours, Defendants send her an "updated Academic Plan that has [her daughter] earning High School credit, as a full time summer student, towards her high school graduation" and a "printed Academic Calendar for this semester (Spring of 2020), the Summer of 2020 and the Fall of 2020 [that includes] all relevant dates and events." (*Id.* at 43). On April 8, 2020, Defendant Zych forwarded Plaintiff's email to Defendants S. Courtney and Smith and asked them, among other things, how he should respond to Plaintiff. Later that day, Defendant Smith responded with instructions as to how Defendant Zych should respond. Finally, Defendant Zych responded to Defendant Smith with an additional question.

Plaintiff seeks production of the latter three emails in this exchange—that is, Plaintiff seeks discovery of Defendant Zych's two emails and Defendant Smith's response to Defendant Zych's initial email. Defendants argue that these emails were prepared in anticipation of litigation. Outside of the increasingly contentious relationship between the parties—as exhibited by Plaintiff's statement in her original April 7, 2020 email that she had copied her attorneys—there is little indication that the emails at issue were drafted *because* litigation was becoming increasingly imminent. This Court's *in-camera* review of

Defendant Zych's two emails and Defendant Smith's response shows only that Defendants were contemplating how to best respond to Plaintiff's email, not that they were necessarily acting with preparation for litigation in mind. The purpose of the emails was to fashion the best possible response to Plaintiff's request for an updated Academic Plan and an Academic Calendar, and it is reasonable to believe that Defendants Zych and Smith would have prepared these emails even in the absence of any anticipated litigation. The Court finds that the April 2020 emails were not prepared in anticipation of litigation and that they are not protected from disclosure by the work-product doctrine.

### *c. June 2020 Email*

On May 21, 2020, Defendant Smith emailed Plaintiff informing her that progress reports had been made available on the "Parent Portal" and requesting permission from Plaintiff for her daughter to attend a "skill-building" exercise in Prescott, Arizona. That same day, Plaintiff responded by granting permission for her daughter to attend the exercise and by demanding certain academic information from Defendants. On June 9, 2020, Plaintiff sent another email renewing her request for production of certain academic information and additionally asking Defendants to confirm or deny three statements. On June 11, 2020, Ms. Mara Allard—Plaintiff's co-counsel in this matter—sent an email to Defendants following up on Plaintiff's June 9, 2020 email, which Defendants had apparently not responded to. There is no dispute as to the disclosure of any of these emails because Plaintiff either sent or received all of them and therefore already has the emails in her possession. The only email apparently in dispute is the final email in the exchange: a June 11, 2020 email sent by Defendant S. Courtney to Defendants Smith, Zych, B. Courtney, Filsinger, Borges, and non-party SRA employee Rudolf. It is this email that Plaintiff seeks production of, and that Defendants consider to be work product.

Having reviewed the email *in camera*, it is unclear to the Court how the June 11, 2020 email from Defendant S. Courtney could be considered work product. The email merely forwards Ms. Allard's email to the other Defendants and instructs them not to respond because Ms. Allard was not an individual who was approved for correspondence

with SRA on topics related to Plaintiff or her daughter. Defendant S. Courtney reasonably would have sent this email regardless of any likelihood of litigation. Defendants have failed to show that Defendant S. Courtney's June 11, 2020 email was prepared in anticipation of litigation and the email is not entitled to work-product protection.

## IV.  CONCLUSION

In sum, the Court finds that the first discovery dispute is resolved partially in Defendants' favor and partially in Plaintiff's favor. The Court orders Plaintiff to provide a signed authorization for the release of her therapy records from Mr. Gregory Ross. However, the Court denies Defendants' request for an Order directing Plaintiff to provide a signed authorization for the release of therapy records from Dr. Sarah Villarreal. With respect to the parties' second discovery dispute, the Court again resolves the dispute partially in each parties' favor. Defendants are ordered to produce for Plaintiff "all communications and documents associated with the workshops attended by [Plaintiff's daughter], Mr. Raymie Stata and/or [Plaintiff], including, but not limited to, any documents outlining the 'Ground Rules' for the workshops. If signed copies exist of any document, produce signed copies as well as unsigned copies." (Doc. 96 at 2). Defendants are further ordered to produce the February 2020 emails, the April 2020 emails, and the June 11, 2020 email from Defendant S. Courtney. Defendants are *not*, however, ordered to produce the "February 11, 2020 Suzie Courtney Note re [Plaintiff's daughter's] absence and AZDHS communication" because it is protected as work product.

Accordingly,

**IT IS ORDERED** that the *first* discovery dispute (Doc. 78) is resolved partially in Defendants' favor and partially in Plaintiff's favor. Plaintiff is directed to provide to Defendants a signed authorization for the release of her medical records from her therapy sessions with Mr. Gregory Ross. Plaintiff is *not*, however, directed to provide any signed authorization for the release of records from Dr. Sarah Villarreal.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (Doc. 96)—which concerns the parties' *second* discovery dispute—is **granted in part and denied in part.**

Defendants are directed to disclose all communications and documents associated with workshops that Plaintiff's daughter, Mr. Raymie Stata, and/or Plaintiff were contracted to attend. This includes all training materials, all handouts, any recordings made of the events, any journals kept regarding the events, and any documents outlining any "Ground Rules" for the workshops. If signed copies exist of any of these documents, Defendants shall produce signed copies as well as unsigned copies. Defendants are further directed to disclose the following documents:

(i) SRA 000220-222 Email from Justin Zych to Suzanne Courtney and Erin Smith re 4/7/20 Email from Plaintiff;

(ii) February 11, 2020 email exchange among Defendants E. Smith, S. Courtney, K Deily, L. Filsinger, V. Borges, and SRA staff S. Dougherty and A. Schleeter re return agreement;

(iii) February 12, 2020 email from Leslie Filsinger to Defendants E. Smith, S. Courtney, K Deily, V. Borges, B. Courtney and SRA staff S. Dougherty and A. Schleeter re return agreement;

(iv) February 13, 2020 email from Defendant S. Courtney to Defendants E. Smith, K Deily, L. Filsinger, V. Borges, B. Courtney and SRA staff S. Dougherty and A. Schleeter re return agreement;

(iv) 4/8/20 email exchange among Defendants J. Zych, E. Smith and S. Courtney re email form Plaintiff;

(v) June 11, 2020 email from Defendant S. Courtney to Defendants E. Smith, J. Zych, B. Courtney, L. Filsinger, V. Borges and staff member K. Rudolf re June 11, 2020 email from Plaintiff's counsel M. Allard (formerly identified as "May 21, 2020 email from Erin Smith").

Dated this 10th day of January, 2023.

Honorable Steven P. Logan
United States District Judge

15