# GRASSO
### —LAW FIRM—

2250 East Germann Road, Suite 10
Chandler, Arizona 85286
(480) 739-1200

Robert Grasso, Jr., Bar No. 015087
Robert J. Lydford, Bar No. 030649
Michael B. Smith, Bar No. 014052
rgrasso@grassolawfirm.com
rlydford@grassolawfirm.com
msmith@grassolawfirm.com
minuteentries@grassolawfirm.com

Attorneys for Defendants Spring Ridge Academy, Jean Courtney,
Suzanne Courtney, Brandon Courtney, Erin Smith, Leslie Filsinger,
Justin Zych, and Kate Deily

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly R. Sweidy,<br><br>Plaintiff,<br><br>vs.<br><br>Spring Ridge Academy, an Arizona corporation, Jean Courtney, Suzanne Courtney, Brandon Courtney, Erin Smith, Leslie Filsinger, Justin Zych, Kate Deily, Veronica Borges, and Does 1 through 20,<br><br>Defendants. | Case No: 3:21-cv-08013-SPL<br><br>**DEFENDANTS SPRING RIDGE ACADEMY AND KATE DEILY'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW** |

Pursuant to Federal Rule of Civil Procedure 50(a), Defendants Spring Ridge Academy and Kate Deily (collectively "SRA" unless otherwise indicated), by and through undersigned counsel, hereby move for judgment as a matter of law on Plaintiff Kimberly Sweidy's claims for actual and constructive common law fraud, aspects of her consumer fraud claim, and Plaintiff's request for punitive damages and disgorgement of profits (i.e. - tuition) for which there is no legally sufficient basis for a reasonable jury to find in Plaintiff's favor, as well as categories of damages that were not caused by SRA's conduct at issue.

This Motion is supported by the following Memorandum of Points and Authorities, exhibits thereto, and trial exhibits which are incorporated herein by this reference.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

As anticipated, the evidence Plaintiff presented at trial all stems from her protracted, ultra-contentious family court battle in California with her ex-husband in which SRA was unwittingly caught in the middle and that can hardly serve as a basis for Plaintiff's fraud claims or alleged punitive or pecuniary damages related to Plaintiff's decision to enroll her daughter at Spring Ridge Academy.  Plaintiff's only remaining claims are for actual and constructive common law fraud and an alleged violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521 *et seq*.  Plaintiff fell far short of satisfying her clear and convincing burden on her claims for common law fraud and constructive fraud, as well as failed to prove aspects of her consumer fraud claim.

Additionally, among her alleged damages, Plaintiff seeks an award of punitive damages on all counts of fraud and "disgorgement of profits" under her consumer fraud claim, Ariz. Rev. Stat. § 44-1521 *et seq*.  Plaintiff has not offered – and the jury has not heard -- any evidence to sustain either category of damages.  Rather, the evidence supports the contrary -- that she is not entitled to punitive damages or an award of disgorged profits. Additionally, the Court already determined that Plaintiff is not entitled to certain additional categories of pecuniary damages, on which Plaintiff offered testimony at trial.  SRA is entitled to judgment as a matter of law on Plaintiff's request for punitive damages, disgorgement of profits and the categories of damages that are not the result of reliance upon any alleged misrepresentation or omission on the part of SRA in making the decision to enroll her daughter at Spring Ridge Academy.

## I. Plaintiff Did Not Prove Her Common Law Actual or Constructive Fraud Claim, Much Less by Clear and Convincing Evidence

Fraud must be proven by clear and convincing evidence.  *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 343, 666 P.2d 83, 88 (Ct. App. 1983).  Thus, Plaintiff must prove both actual and constructive fraud by clear and convincing evidence.  *Melvin v. Stevens*, 10 Ariz. App. 357, 360, 458 P.2d 977, 980 (1969) ("The evidence of fraud or mistake must be clear and convincing. Where fraud is alleged, there must be a

misrepresentation of a material fact by the defendant or his agent, which was relied upon by the plaintiff in signing the release. If the misrepresentation is intentional, actual fraud is involved; if unintentional, constructive fraud is involved."); *Ferneau v. Wilder*, 256 Ariz. 68, 535 P.3d 554, 559 (Ct. App. 2023), *review denied* (Feb. 6, 2024) ("The ordinary meaning of fraud includes both actual fraud and constructive fraud.); *Rhoads v. Harvey Publications, Inc.*, 145 Ariz. 142, 146, 700 P.2d 840, 844 (Ct. App. 1984) ("actions based on fraud must be proven by clear and convincing evidence."); *Brazee v. Morris*, 68 Ariz. 224, 228, 204 P.2d 475, 477 (1949) (applying the same clear and convincing standard to actual and constructive fraud claims); *Smith v. Pinner*, 68 Ariz. 115, 122–23, 201 P.2d 741, 745–46 (1948), *disapproved of on other grounds by Marshall v. Superior Ct., Maricopa Cnty.*, 131 Ariz. 379, 641 P.2d 867 (1982) ("It required a strained construction indeed for the jury to find that such conduct amounted to clear and convincing evidence of either actual or constructive fraud.")

The clear and convincing standard requires more than being more probably true, it must be "highly probable". RAJI (Civil) 7th ed. Standard 3. Plaintiff falls far short of satisfying this burden.

"Plaintiff's fraud claims are broadly based on her allegation that Defendants fraudulently induced Plaintiff into enrolling her daughter at SRA by concealing and otherwise misrepresenting the true nature of the SRA program." (Doc. 166 at 6:26-28). Thus, any conduct that is the basis of the purported fraud must have occurred before or at the time of enrollment.

At most, Plaintiff has demonstrated that she did not appreciate the nature of aspects of the program in which she enrolled her daughter. However, SRA did not misrepresent any aspect of the program prior to (or thereafter, although this is irrelevant) Plaintiff's decision to enroll her daughter at Spring Ridge Academy. Prior to enrollment, SRA informed Plaintiff of the nature of its program:

- The Enrollment Terms and Agreement signed by Plaintiff clearly stated: "I/We understand that the services offered by SRA are physically and emotionally challenging. Sponsor(s) give their consent for the Student to

participate in all aspects and activities of SRA. Activities may include, but are not limited to: academic classes, academic counseling, therapy, experiential seminars, rigorous exercise, hiking, swimming, sporting games, activities off and on grounds, work projects, transportation, and intervention when deemed necessary. (Doc. 1 at ¶128 (Exhibit "A" to Complaint at p. 2)).

- The Enrollment Terms and Agreement specified parental participation "in the Parent Challenge and the Family Trainings all of which are key elements of the program." (Doc. 1 at ¶128 (Exhibit "A" to Complaint at p. 2)).

- Plaintiff read, multiple times, every word of the Parent Manual, academic profile, reference list, SRA brochure, weekend schedule, weekday schedule, and Therapy at Spring Ridge Quick Info. before enrolling her daughter – including reviewing the Parent Manual three or four times. (Kimberly Sweidy June 7, 2024 p.m. cross-examination at 45:17-46:6, 49:10-51:15, excerpts attached hereto as **Exhibit 7**). She had these materials approximately four weeks before enrolling her daughter. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 52:3-7).

- The Parent Manual that Plaintiff admits receiving prior to enrollment and is the basis of her fraud claims, clearly informed Plaintiff of the use of "Post Induction Therapy", as well as Teen Challenge and Parent Challenge. (Trial Exhibit 7 at p. 5, 7-8; Doc. 1 (Complaint) at ¶ 711 (Plaintiff relied on the Parent Manual)).

- Prior to enrollment, Plaintiff received and reviewed a handout that discussed Post Induction Therapy and referenced Pia Mellody. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 45:17-46:6, 49:10-51:15, 79:11-15).

- Prior to enrollment, Plaintiff was informed Teen Challenge was a "dynamic three-day seminar designed to challenge the student's self-limiting beliefs, attitudes, and behaviors" and would "introduce the student to accountability and responsibility for life choice." (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 64:14-22).

- The Parent Manual indicated therapy is through a trauma-informed lens. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 69:1-4).

- Plaintiff reviewed and read that Spring Ridge Academy used "experiential education student workshops and experiential education parent workshops." (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 46:6-18). She googled "experimental education workshops" prior to enrolling her daughter at Spring Ridge Academy. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 47:9-13, 48:6-12; 48:21-23).

- Based on the materials provided by SRA, Plaintiff understood she was sending her daughter to a therapeutic boarding school. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 58:15-19).

- Plaintiff was provided a parent reference list and she could have called the individuals listed therein before enrolling her daughter to inquire about the program but she never did. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 78:10-25).

- After reviewing the Parent Manual and other materials provided to her, Plaintiff had the opportunity to ask questions of SRA about the program and contents of the materials. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 85:3-22).   Plaintiff never asked about workshops that were unclear to her. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 88:6-10).

- Plaintiff visited and toured the Spring Ridge Academy campus, including having lunch and interacting with Spring Ridge Academy students, before enrolling her daughter.  (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 89:14-19, 91:17-19, 97:13-25).

- Prior to making the decision to enroll her daughter, Plaintiff was informed Veronica Borges would be her daughter's therapist and was provided information regarding Ms. Borges. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 91:15-92:24, 93:12-20).

- Prior to enrollment, Plaintiff understood there were four phases to Spring Ridge Academy's program and during the first two phases, phone calls were monitored.  (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 72:6-13).

Plaintiff never asked anyone at Spring Ridge Academy or the educational consultant she and her ex-husband hired about the workshops with which she was unfamiliar. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 52:9-13, 52:21-24, 54:25-55:6).  But she talked with her and her daughter's therapists about enrolling her daughter at Spring Ridge Academy. (**Exhibit 7** (Kimberly Sweidy June 7, 2024 p.m. cross-examination) at 53:1-23).

The use of Post Induction Based methodologies and the Teen Challenge and Parent Challenge workshops are the bases of Plaintiff's fraud claims.  (*See* Kimberly Sweidy June 6, 2024 a.m. direct examination at 43:8-11, excerpts attached hereto as **Exhibit 1**).  And SRA clearly advised of the use of such methodologies.

Whether any of the workshops were based on a methodology known as The Large Group Awareness Training was never misrepresented to Plaintiff.  Rather, Plaintiff takes issue with SRA failing to disclose that the Teen or Parent Challenge were based on Lifespring seminars or The Large Group Awareness Training methodology.  (Doc. 1 at ¶¶ 658-659).  SRA had no duty to disclose the evolution and development of its program and

workshops and Plaintiff never asked.  Plaintiff admits no one told her any additional details regarding Teen Challenge or Parent Challenge and she did not raise any issues or concerns about the workshops until after she enrolled her daughter, her daughter attended Teen Challenge and she (Plaintiff) attended Parent Challenge.  (Kimberly Sweidy June 5, 2024 p.m. direct examination at 41:21-42:22, excerpts attached hereto as **Exhibit 2**).  This was long after she made the decision to enroll her daughter and cannot serve as the basis of her fraud claims that are based on her enrollment decision.

Additionally, at the time of Plaintiff's daughter's enrollment, the evolution and details of Teen Challenge and Parent Challenge were not material to Plaintiff's enrollment decision since Plaintiff asked no questions about nor clarified the structure of the workshops prior to enrolling her daughter.  This only became important to Plaintiff (i.e. – material) after Plaintiff's daughter started attending Spring Ridge Academy and Plaintiff became disgruntled with SRA because she viewed SRA as being in collusion with her ex-husband.[1]  Thus, Plaintiff failed to satisfy the materiality element of her fraud claim.

Plaintiff's common law fraud claim is also based on the allegation "SRA did not inform [Plaintiff] that contact with her daughter while a resident would be conditioned on [Plaintiff's] participation" in workshops. (Doc. 1 (Complaint) at ¶ 656).  Plaintiff participated in the workshop that underlies Plaintiff's concerns – Parent Challenge.  Her contact with her daughter was never limited based on workshop participation.  Rather, any limitation on the contact between Plaintiff and her daughter was the result of Plaintiff's unauthorized and unilateral removal of her daughter without her ex-husband's consent or approval and the subsequent family court order that required Plaintiff's daughter to return to Spring Ridge Academy, as well as Plaintiff's admitted refusal to communicate with her daughter after these events.  (**Exhibit 1** (Kimberly Sweidy June 6, 2024 a.m. direct examination) at 66:12-20 (refusing to have calls with her daughter)).  There simply is no

---

[1] Although Plaintiff takes issue with SRA communicating with her ex-husband without her participation or knowledge, Plaintiff never alleged and offered no evidence that SRA ever represented ex parte communications with a parent would not take place.

evidence to support a causal nexus between any limited contact between Plaintiff and her daughter and workshop participation, which is a basis of Plaintiff's fraud claims.

Knowledge of the falsity of a representation and the speaker's intent that the representation would be relied upon in the manner contemplated are required elements to a fraud claim. *Taeger v. Cath. Fam. & Cmty. Servs.*, 196 Ariz. 285, 294 (Ct. App. 1999). Yet, Plaintiff failed to present any evidence that SRA had any knowledge of any purported false representation, much less an intent on the part of SRA that any alleged, illusive false statement would be relied upon by Plaintiff.

Thus, Plaintiff has no evidence and is unable to prove the misrepresentation, materiality, SRA's knowledge of any purported misrepresentation and intent elements of her common law fraud claim. And by no means does she satisfy the heightened clear and convincing standard for these elements.

Additionally, Plaintiff's constructive fraud claim requires a confidential relationship between her and Spring Ridge Academy. *Rhoads v. Harvey Publ'ns, Inc.,* 145 Ariz. 142, 148-49 (Ct. App. 1984) (requiring a confidential relationship to support a constructive fraud claim). "To establish a fiduciary (confidential) relationship there must be something approximating business agency, professional relationship, or family tie." *Id.* at 149. "Mere trust in another's competence or integrity does not suffice" to create a fiduciary relationship. *Id.*; *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 24, 945 P.2d 317, 335 (Ct. App. 1996), *as corrected on denial of reconsideration* (Jan. 13, 1997).

At the time of the relevant enrollment decision, the parties were merely exploring an arms-length transaction. Plaintiff even utilized an education consultant in this process. Thus, Plaintiff had no confidential relationship with Spring Ridge Academy from which a duty could arise to support a constructive fraud claim. There is no evidence to the contrary. Therefore, Plaintiff's constructive fraud claim fails as a matter of law on this basis as well.

**II. Plaintiff Failed to Prove Aspects of Her Claim Under the Arizona Consumer Fraud Act**

Plaintiff's consumer fraud claim is based in part on the allegation "Defendants used deception in advertising and making representations that the therapy services provided by SRA was evidenced-based…" (Doc. 1 at ¶ 716). The Parent Manual stated cognitive based therapies would be used, which even Plaintiff's expert testified are evidence-based. (Trial Exhibit 7 at p. 5; Dr. Jay Flens June 6, 2024 p.m. direct examination at 16:7-17:11, excerpts attached hereto as **Exhibit 3**). Thus, certain services were evidence-based. (Martin Williams, Ph.D. June 7, 2024 a.m. at 22:7-17 ("…it's saying that it uses a variety of interventions, and these are some of the ones it uses and that some of these are evidence based."), excerpts attached hereto as **Exhibit 4**).

And no materials provided nor any representation by SRA at time of enrollment (or otherwise, although again this is irrelevant) claimed evidence-based services were the only services that were offered. To the contrary, The Enrollment Terms and Agreement signed by Plaintiff clearly advised: "I/We understand that the services offered by SRA are physically and emotionally challenging. … Activities may include, but are not limited to: academic classes, academic counseling, therapy, **experiential seminars**, rigorous exercise, hiking, swimming, sporting games, activities off and on grounds, work projects, transportation, and intervention when deemed necessary. (Doc 1 at ¶ 128 (Exhibit "A" to Complaint at p. 2) (emphasis added)). Thus, there is no evidence to support a consumer fraud claim related to the evidence-based nature of certain therapies utilized at Spring Ridge Academy.

Plaintiff also alleges "Defendants used deception in advertising and making representations… that SRA was a college prep school and that the school provided family therapy." (Doc. 1 at ¶ 716). There is no evidence that SRA was not college prep and it did provide family therapy. Family therapy would not necessarily include all family members and the evidence established Mr. Stata (the father of Plaintiff's daughter) did participate in family therapy. In fact, Mr. Stata participated with his daughter, while it was Plaintiff that refused when she became paranoid of collusion between SRA and Mr. Stata. (**Exhibit 4** (Martin Williams, Ph.D. June 7, 2024 a.m.) at 16:5-17:7; Ex. 311 at SRA 000730 (mom

doesn't want to participate in family sessions) at SRA 000729 (family session with just dad)).  Thus, the evidence supports that family therapy was provided.

Based on a lack of evidence, SRA is entitled judgment as a matter of law on Plaintiff's consumer fraud claim to the extent it is based on SRA allegedly misrepresenting (1) offering evidence-based therapy, (2) the college prep nature of the school and (3) that family therapy would be offered.

### III.   Plaintiff Presented No Evidence to Support an Award of Punitive Damages

Punitive damages may be imposed only "in the most egregious of cases." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 332, 723 P.2d 675, 881 (1986). "[P]unitive damages are not awardable unless there is something more than the conduct required to establish the tort." *Id.* This "something more" is an "evil mind" and "outwardly aggravated, outrageous, malicious, or fraudulent conduct." *Id.* at 331, 723 P.2d at 680.  Plaintiffs must show, by clear and convincing evidence, outrageous conduct motivated by spite or evil motive. *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986).

The evidence offered by Plaintiff falls woefully shy of even approaching a clear and convincing showing of spite or an evil motive on the part of Defendant Spring Ridge Academy or Defendant Kate Deily.  Plaintiff's own experts do not even suggest SRA departed from any applicable standard of care.  (Doc. 166 at 19:23-27 ("Plaintiff apparently has three experts to support her claims, but one would not know that from reading her Response as it fails to even mention these experts, let alone point the Court to a place in their reports where the experts opine as to the standard of care, whether and how Defendant SRA breached that standard, or how such a breach caused the harm to Plaintiff.")).  Plaintiff's experts offered no standard of care testimony nor suggested SRA acted with an evil motive towards Plaintiff related to her decision to enroll her daughter, which is the relevant inquiry since only fraud claims related to Plaintiff's decision to enroll her daughter remain.  (Doc. 166 at 8:26-27 ("…Plaintiff's decision to enroll her Daughter at SRA in the first place, i.e., the actionable conduct at issue in this fraud claim.")).  Plaintiff's experts had not seen any of the SRA treatment records and therefore did not even address Plaintiff's

(or her daughter's) experience at Spring Ridge Academy, but rather generally provided their opinions on certain established treatment modalities utilized by Spring Ridge Academy.  And Plaintiff's expert, Dr. Flens, confirmed certain therapies utilized by Spring Ridge Academy are evidence based (**Exhibit 3** (Dr. Jay Flens June 6, 2024 p.m. direct examination) at 16:7-17:11) and that it is not improper to conduct family therapy with fewer than all family members (**Exhibit 3** (Dr. Jay Flens June 6, 2024 p.m. direct examination) at 50:19-24, 51:14-18).  Plaintiff's other expert, John Hunter, Ph.D., simply testified regarding his personal experience, research and opinions regarding large group awareness training.  He never spoke with anyone that attended Spring Ridge Academy and offered no opinions specific to Plaintiff or her daughter.  (John Hunter, Ph.D. June 5, 2024 a.m. cross-examination at 82:23-25, 87:10-15, excerpts attached hereto as **Exhibit 9**).

Defendants' experts testified at trial that the therapy/treatment provided and the program structure and experiences at Spring Ridge Academy are commonplace for therapeutic boarding schools and appropriate. (**Exhibit 4** (Martin Williams, Ph.D. June 7, 2024 a.m. cross-examination) at 15:6-17:1, 18:5-19:19, 24:1-25:5, 27:20-28:5 ("… When I reviewed the records, I was looking for something that would indicate to me that there was a problem in the treatment, that they had done something wrong, something inappropriate. That's all I looked for and I didn't find anything. Everything I reviewed seemed professional and appropriate and likely helpful"); **Exhibit 4** (Jared Balmer, Ph.D. June 7, 2024 a.m. cross-examination) at 84:22-85:9 ("… I would say I didn't discover anything that was not appropriate.")).  There simply is no evil motive behind Spring Ridge Academy's therapeutic program that the undisputed testimony establishes was appropriate and carried out in an appropriate manner in this case.

Plaintiff offered evidence of others' experiences at SRA, but this testimony from a handful of the approximate 1,200 students that preceded Plaintiff's daughter at Spring Ridge Academy relates to a time period prior to Plaintiff's daughter enrollment and does not suggest any intent or motive on the part of SRA related to any representation (or omission) to Plaintiff that resulted in the enrollment of Plaintiff's daughter.  (Troy Williams

June 4, 2024 p.m. direct examination at 19:2-5, 34:23-35:3, 35:15-28 (daughter attended SRA October of 2017 through December 2018 and he has no experience of SRA after his daughter left), excerpts attached hereto as **Exhibit 5**; **Exhibit 5** (Molly Adkins June 4, 2024 p.m. direct examination) at 49:17-20, 81:25-82:11 (attended SRA from August 2014 through July 2015 and had no knowledge of SRA after she left when Plaintiff's daughter attended); **Exhibit 5** (Maisy Morehead June 4, 2024 p.m. direct examination) at 127:4-25 (attended SRA March 2015 through May 2016 and has no firsthand knowledge of SRA after she left); **Exhibit 5** (Emma Kerrigan June 4, 2024 p.m. direct examination) at 129:13-16, (attended SRA October 2013 through June 2015); Aimee Yelinek June 5, 2024 a.m. direct examination at 33:22-23 (has never been to SRA), excerpts attached hereto as **Exhibit 6**; Suzanne Courtney May 31, 2024 p.m. cross-examination at 16:23-17:1 (about 1,200 students had been served at Spring Ridge Academy by the time Plaintiff's daughter was enrolled.), excerpts attached hereto as **Exhibit 8**).

The evidence does not establish or substantiate any mindset of any individual affiliated with Defendant Spring Ridge Academy towards Plaintiff.  Although Plaintiff disagrees with certain methods that she considers unorthodox or unacceptable, even her own experts do not suggest that SRA failed to provide sufficient information regarding methodologies or workshops or that any conduct of SRA leading up to Plaintiff' enrollment decision fell below any standard of care, much less rose to the level of malicious intent.

Quite simply, Plaintiff failed to offer any evidence that even approaches satisfying the clear and convincing burden of proof for punitive damages.  SRA is entitled to judgment as a matter of law on Plaintiff's claim for punitive damages.

### IV.   Plaintiff is Not Entitled to an Award of Damages Related to Tuition Payments Made by Her Ex-Husband

Plaintiff's request for disgorgement of profits relates to the tuition that was paid to SRA. (Doc. 215 at 4:17-23).  Plaintiff testified that she did not pay tuition to SRA.  Rather, it is undisputed the tuition was paid by a non-party, her ex-husband and the father of Plaintiff's daughter.  (**Exhibit 2** (Kimberly Sweidy June 5, 2024 p.m. direct examination)

at 64:11; **Exhibit 1** (Kimberly Sweidy June 6, 2024 a.m. direct examination) at 15:13-21).

Plaintiff bargained in the context of divorce action for her ex-husband to bear the financial responsibility for any educational expenses, which is exactly what she received. (**Exhibit 1** (Kimberly Sweidy June 6, 2024 a.m. direct examination) at 13:8-14:23).   She paid nothing for her daughter to attend SRA.  Plaintiff does not allege that she would have been entitled to the funds that were paid to SRA under any scenario and it is unclear why she believes she is entitled to an award of these funds.

Plaintiff only has two claims through which she can seek to be awarded disgorged profits as damages – common law fraud and violation of the Arizona Consumer Fraud Act ("ACFA").  Although the ACFA provides for the disgorgement of profits, the disgorged profits are to be "restored" to a person or paid to the state in an action initiated by the attorney general.  Ariz. Rev. Stat. § 44-1528(A)(2), (3).  Plaintiff paid nothing that could be "restored" to her.  And the ACFA does not provide for an award of disgorged profits to a private plaintiff who did not pay the amount to be disgorged.  *See* generally Ariz. Rev. Stat. § 44-1521 *et seq*.  Similarly, no authority supports awarding disgorged profit damages to a party that did not pay as a remedy for a common law fraud claim.  In fact, no legal authority could be found that allows for an award of disgorged profits as damages on any claim by a private plaintiff, as opposed to a regulatory authority such as the Securities Exchange Commission or an attorney general, who did not provide funds to the defendant.

If Plaintiff suffered any damages (which SRA denies), they were not in the form of any funds Plaintiff paid to SRA.  Plaintiff quite simply has no legal basis to claim damages in the form of disgorged profits, and no basis for her to recover damages in the form of tuition payments made by her ex-husband.  Therefore, SRA is entitled to judgment as a matter of law on Plaintiff's request for disgorged profit damages.

**V.**   **SRA is Entitled to Judgment as a Matter of Law on Plaintiff Request for Damages for Conversion of Property, Legal Fees and Costs, Counseling and Future Therapy Sessions, Plaintiff's Personal "time damages" Researching and Prosecuting This Lawsuit, and Loss of Child Support**

SRA secured summary judgment on Plaintiff's claims for breach of contract/breach of warranty, breach of the covenant of good faith and fair dealing, violations of the Racketeer Influenced and Corrupt Organization ("RICO") Act, negligence per se, intentional infliction of emotional distress, and conversion.  (Doc. 166 at 4:15-20, 31:12-16).  Thereafter, SRA moved *in limine* to preclude the admission of evidence relating to non-pecuniary damages based on Arizona law only allowing for pecuniary damages on fraud claims and summary judgment being rendered in favor of SRA on all claims for which special or consequential damages might otherwise be awarded.  (Doc. 182 (Motion *in Limine* #1)).   In ruling on this motion *in limine*, the Court noted although "[u]nder Arizona law, consequential damages may be available if they arise from fraudulent conduct. *Cole v. Gerhart*, 423 P.2d 100, 102 (Ariz. 1967). … a victim of fraud is only entitled to compensation if the wrong was the natural and proximate result of the fraud. *Id.* at 103."  (Doc. 215 at 3:5-8). "Plaintiff has included the following in her calculation of damages: (1) claims for conversion of property (a previously dismissed claim), (2) legal fees and costs related to this litigation, (3) counseling sessions (for which no expert has been identified), (4) future therapy sessions ($776,000), (5) disgorging of profits ($117,000), (6) Plaintiff's personal 'time damages' researching and prosecuting this lawsuit ($900,000), (7) and loss of child support ($220,000)."  (Doc. 215 at 3:20-25). However, the Court acknowledged and agreed, "[w]ith the exception of disgorgement of profits, none of the above claims for damages can fairly be said to be the natural and proximate result of the alleged fraud." (Doc. 215 at 3:26-27).  The Court explained:

> …damages calculation for conversion of property are only relevant to a previously dismissed claim, and not to the remaining claims of fraud. Evidence of these damages thus will not be allowed. Second, the choice to begin this litigation is completely unrelated from Defendants' allegedly fraudulent conduct. Plaintiff's lost time prosecuting this case is also similarly unrelated. The proper mechanism for obtaining these alleged losses is to move for attorney's fees. Plaintiff's arguments at the final pretrial conference failed to distinguish how these damages differed from attorney's fees, especially as she is also acting as a counsel of record. Third, it is not reasonable to say that counseling and therapy sessions are the direct result of Plaintiff's reliance on the allegedly false representation by Defendant. Plaintiff may have taken these actions to help her and her child deal with the consequences of what allegedly occurred at Springe Ridge Academy, but this

is too attenuated from the alleged fraud to be considered the legal or factual cause of these damages. Similarly, the loss in child support related to Plaintiff's decision to de-enroll her daughter from Spring Ridge Academy was her choice alone. While the Court agrees that this may have been a rational choice based on the allegations, that does not make it the natural and proximate result of the fraud.

(Doc. 215 at 4:1-16).

The Court ruled:

…the Court finds much of the proposed evidence supporting Plaintiff's claim for damages is inadmissible. Plaintiff may present evidence of consequential damages for fraud, but only if the allegedly fraudulent conduct is both the cause in fact and legal cause of the pecuniary loss. The Court finds that claims for conversion of property, legal fees and costs related to this litigation, counseling and future therapy sessions, Plaintiff's personal "time damages" researching and prosecuting this lawsuit, and loss of child support **<ins>are all not the factual or proximate result of reliance on Defendants' alleged misrepresentations or omissions</ins>**. Plaintiff may not present evidence of these Damages at trial. …

(Doc. 215 at 5:5-14 (emphasis added)).

At no time has the Court overturned or modified its prior rulings on Defendants' motion for summary judgment and Defendants' motion *in limine* #1.  As such, Plaintiff's damages claims are limited to pecuniary losses related to her decision to enroll her daughter, which cannot include the damages previously excluded by the Court.

Plaintiff's testimony regarding receiving $22,000/month in child support at the time her daughter was enrolled at Spring Ridge Academy (Kimberly Rene Sweidy June 6, 2024 a.m. direct examination at 13:3-7, 95:12-16, excerpts attached hereto as **Exhibit 1**); counseling and therapy sessions[2] (**Exhibit 1** (Kimberly Sweidy June 6, 2024 a.m. direct examination) at 96:18-97:7, 99:5-10 (discussing therapy sessions with Gregory Ross); **Exhibit 3** (Kimberly Sweidy June 6, 2024 p.m. direct examination) at 82:4-83:1 (costs associated with Plaintiff's "regular therapist" -- Dr. Martha Cravens, and therapist appointed by the California family court – Gregory Ross); "Computer charges" related to

---

[2] The Court previously found "it is not reasonable to say that counseling and therapy sessions are the direct result of Plaintiff's reliance on the allegedly false representation by Defendant. Plaintiff may have taken these actions to help her and her child deal with the consequences of what allegedly occurred at Springe Ridge Academy, but this is too attenuated from the alleged fraud to be considered the legal or factual cause of these damages." (Doc. 215 at 4:8-12).

researching the claims and allegations against SRA (**Exhibit 3** (Kimberly Sweidy June 6, 2024 p.m. direct examination) at 83:2-84:10; reproduction and purchase charges related to researching the claims and allegations against SRA (**Exhibit 3** (Kimberly Sweidy June 6, 2024 p.m. direct examination) at 84:20-85:12, 101:19-102:12; and clothing and personal property sent to Spring Ridge Academy[3] (**Exhibit 3** (Kimberly Sweidy June 6, 2024 p.m. direct examination) at 89:9-23 ($1,975.53 in clothing), 92:11-20 ($181.75 for a repurposed calculator), 92:21-93:3 ($280.19 for lacrosse equipment), 93:5-17 ($2,106.10 for linens/bedding) 96:14-23 ($52.30 in school supplies)) are not categories of damages that may be awarded in this case as the Court already ruled they are not the "factual or proximate result" of the Defendants' conduct at issue. (Doc. 215 at 5:5-14). Rather, SRA is entitled to judgment as a matter of law on Plaintiff's request for damages for conversion of property, legal fees and costs related to this litigation, counseling and future therapy sessions, Plaintiff's personal "time damages" researching and prosecuting this lawsuit, and loss of child support.

Additionally, Plaintiff presented no evidence to support any expenses associated with the California family law matter, including legal and expert fees (**Exhibit 3** (Kimberly Sweidy June 6, 2024 p.m. direct examination) at 79:5-81:2 ($80,328.93 in legal fees in 2022 and $6,192.50 in expert fees)) or therapist charges that were incurred in the context and result of the family law matter (which the Court already determined were not the "factual or proximate result" of the Defendants' conduct at issue) were proximately caused by any act or omission of SRA. Rather, the evidence at trial established Plaintiff's contentious family court battle with her ex-husband was the factual and proximate cause of such damages, if any. Thus, consistent with the Court's rulings on SRA's motion for summary judgment and motion *in limine* #1 and because no evidence supports factual or

---

[3] The clothing was included in the conversion claim upon which summary judgment was granted in favor of SRA. (Doc. 1 at 123:7-11, Doc. 215 at 3:28-4:3).

proximate causation, SRA is entitled to judgment as a matter of law on Plaintiff's request for legal and expert fees and therapist charges incurred in relation to her family law action.

Plaintiff's damages claims are limited to pecuniary losses attributable to SRA's conduct related to Plaintiff's decision to enroll her daughter (not the costs related to the raging family court battle). SRA is entitled to judgment as a matter of law on all other categories of pecuniary damages (as well as punitive damages as addressed *supra*).

## VI.   Conclusion

Plaintiff utterly failed to prove her actual and constructive fraud claim by clear and convincing evidence and failed to prove her consumer fraud claim to the extent this claim is based on (i) offering evidence-based therapy, (ii) the college prep nature of the school and (iii) that family therapy would be offered. To the contrary, there is a lack of evidence to support these claims. Therefore, Defendants Spring Ridge Academy and Kate Deily are entitled to judgment as a matter of law on the foregoing fraud claims.

Furthermore, Plaintiff offered no evidence in support of her request for punitive damages, and she is not entitled to any disgorgement of profits (i.e. – tuition) because she paid no funds to Spring Ridge Academy. Finally, there is no factual or legal basis for Plaintiff's request for damages for conversion of property, legal fees and costs, counseling and future therapy sessions, Plaintiff's personal "time damages" researching and prosecuting this lawsuit, and loss of child support, which the Court previously found were not caused by any conduct at issue in this case. Despite providing testimony at trial concerning additional elements of (previously disallowed) damages, there has been no evidence to establish that any act or omission of SRA were the proximate cause of these damages — Plaintiff's highly contentious family court battle with her ex-husband was the proximate cause of these damages. Therefore, judgment as a matter of law must be entered in favor of Defendants Spring Ridge Academy and Kate Deily on Plaintiff's request for:

     (1)    Punitive damages;

     (2)    Tuition payments; and

(3)     Damages for conversion of property, legal fees and costs (including expert fees) related to this litigation and the California family law case, counseling and future therapy sessions, Plaintiff's personal "time damages" researching and prosecuting this lawsuit, and loss of child support.

Plaintiff's damages are limited to pecuniary damages that were factually and proximately caused by any fraud on the part of Defendant Spring Ridge Academy or Defendant Kate Deily related to Plaintiff's decision to enroll her daughter, if any, which may not include the above.

RESPECTFULLY SUBMITTED this 12th day of June, 2024.

**GRASSO LAW FIRM, P.C.**

By     */s/ Michael B. Smith*
Robert Grasso, Jr.
Robert J. Lydford
Michael B. Smith
2250 East Germann Road, Suite 10
Chandler, Arizona 85286
   Attorneys for Defendants Spring Ridge
   Academy, Jean Courtney, Suzanne Courtney,
   Brandon Courtney, Erin Smith, Leslie
   Filsinger, Justin Zych, and Kate Deily