Thomas L. Hudson, 014485
Timothy J. Eckstein, 018321
Emma Cone-Roddy, 034285
OSBORN MALEDON, P.A.
2929 North Central Avenue, 20th Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
thudson@omlaw.com
teckstein@omlaw.com
econe-roddy@omlaw.com

Robert Grasso, Jr., 015087
Robert J. Lydford, 030649
Michael B. Smith, 014052
GRASSO LAW FIRM, P.C.
2250 East Germann Road, Suite 10
Chandler, Arizona 85286
(480) 739-1200
rgrasso@grassolawfirm.com
rlydford@grassolawfirm.com
msmith@grassolawfirm.com
minuteentries@grassolawfirm.com

Attorneys for Defendants Spring Ridge Academy
and Kate Deily

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| Kimberly R. Sweidy, | Case No: 3:21-cv-08013-SPL |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANTS' MOTION TO CORRECT A CLERICAL MISTAKE, MOTION FOR JUDGMENT AS A MATTER OF LAW, AND ALTERNATIVE MOTION FOR NEW TRIAL AND TO REDUCE THE PUNITIVE DAMAGES AWARD** |
| Spring Ridge Academy et. al., | |
| Defendants. | |

Although the Court has not yet entered the Final Judgment in this matter (entry of judgment against other Defendants is still pending)[1], Defendants Spring Ridge Academy ("Spring Ridge") and Kate Deily move to have Court enter a Final Judgment that reflects any changes required by this motion and Plaintiff's Motion for Attorneys' Fees and Costs (rather than entering multiple amended judgments).  Deily moves under Fed. R. Civ. P. 60(a) to correct a clerical error in the clerk's judgment that erroneously entered judgment against her on Count I(C), on which the jury found in her favor.  Defendants Spring Ridge and Deily also move for judgment as a matter of law under Fed. R. Civ. P. 50(b). Defendant Spring Ridge moves in the alternative for a new trial under Fed. R. Civ. P. 50(b), 50(c)(1), and 59.  Defendants bring these motions because: (1) there is insufficient evidence supporting the jury's verdict on Plaintiff's fraud claims; (2) there is insufficient evidence supporting the jury's award of punitive damages; and (3) the jury's verdict was tainted by unfairly prejudicial evidence and extraneous prejudicial information. Alternatively, if the punitive damages award is not eliminated, the Court should reduce it to no more than $50,000 under Rule 59 because it is unconstitutionally excessive.

## INTRODUCTION

Before trial, the Court granted summary judgment on all claims other than those for common law fraud (actual and constructive) and the Arizona Consumer Fraud Act. (Doc. 166 at 31:5-16.)  That left for trial whether Defendants fraudulently induced Plaintiff Kimberly Sweidy to enter into a contract she otherwise would not have; in particular, whether Spring Ridge, and its admissions director Deily, made materially false statements (or omissions) regarding the "true nature of [Spring Ridge's] program" on which Plaintiff relied in enrolling her daughter in Spring Ridge's therapeutic boarding school. (*Id.* at 6:27-28.)  Accordingly, Plaintiff was obligated at trial to produce evidence

---

[1] Plaintiff purported to file on June 12 a Notice of Appeal as to Doc. 166, the Court's order on Defendants' summary judgment motion. (Doc. 314.)  At best, this Notice is premature, as the Court has not yet disposed of this motion or Plaintiff's Motion for Attorneys' Fees and Costs (Doc. 292).  Fed. R. App. P. 4(a)(4)(B)(i).

showing that Defendants made materially false statements or omissions prior to her enrolling her daughter. She did not do so because no such evidence exists.

Lacking evidence that she was defrauded *in the enrollment process*, Plaintiff instead focused her case on her *post-enrollment* dislike of certain Spring Ridge workshops and conditions. Among other things, Plaintiff elicited testimony from former students who did not attend the school with her daughter, and even a former student of a different boarding school. Unsurprisingly, these witnesses did not present testimony relevant to whether Defendants concealed or otherwise misrepresented "the true nature of the [Spring Ridge] program" from Plaintiff. (*Id.*)[2]

The jury nevertheless returned a verdict against Spring Ridge for Count I (actual and constructive fraud, $25,000), and Count II (consumer fraud, $25,000). The jury also checked the "Liable" space below Deily's name only in connection with Count II(A) (consumer fraud) but awarded no damages. (Doc. 275.) The jury further awarded Plaintiff $2.5 million in punitive damages against Spring Ridge. (*Id.*)

After the verdict, Defendants learned that a self-identified juror was actively posting in a Reddit subgroup that Plaintiff had for years been using to post information and seek assistance relevant to this case. Defendants have separately moved to interview the jurors regarding the extraneous prejudicial information and outside influences that improperly impacted their deliberations. (Doc. 301.)

…

…

…

---

[2] Defendants moved after the close of evidence for judgment as a matter of law under Rule 50(a), arguing that Plaintiff had failed to prove at trial fraud, constructive fraud, consumer fraud, or punitive damages, or her entitlement to various categories of damages. (Doc. 263.) In denying the motion, the Court opined that the motion "rest[s] heavily on Motion in Limine No. 1, which was decided last year . . . ." (June 12, 2024, a.m. Trial Transcript at 88:4-11, attached hereto as **Exhibit 1**.) In fact, Defendants' motion for judgment as a matter of law was not, as was the motion in limine, premised on the admissibility of evidence, but on the insufficiency of evidence on the core issues in this case.

**I.      The Court should correct the clerical error in the judgment and enter judgment in Deily's favor for Count I(B).**

Pursuant to Federal Rule of Procedure 60, "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment . . . ." Here, the verdict form reflects that the jury found Deily *not liable* for actual fraud (Count I(B)) and liable for consumer fraud (Count II (B)), with no damages. (Doc 275.) Due to an apparent clerical error, the Court's civil minutes state that: "Judgment is entered in favor of Plaintiff and against Defendant Kate Deily as to *Counts I(C)* and II(B)." (Doc. 273) (emphasis added). That is incorporated in the clerk's judgment (Doc. 274).

That judgment remains "[s]ubject to Rule 54(b)," Fed. R. Civ. P. 58(a)(1), meaning Final Judgment has not yet been entered in this case because Rule 54(b) judgments against other defendants are outstanding and the clerk's judgment did not include Rule 54(b) language. *See* Fed. R. Civ. P. 54(b) (in cases with multiple parties no final judgment exists for fewer than all parties unless court expressly orders with the requisite language). Accordingly, when the Court enters the Final Judgment (after ruling on this motion, Plaintiffs' attorneys' fee motion, and entering the other Rule 54(b) judgments), that judgment should reflect that Deily prevailed on Count I(C).

**II.     The Court should enter judgment in Defendants' favor for Counts I(C) and II(B).**

To prevail on a claim for constructive fraud and consumer fraud, one must prove damages. *See Dawson v. Withycombe*, 216 Ariz. 84, 108 ¶ 72 (App. 2007) (constructive fraud requires justifiable reliance to one's detriment); *Cheatham v. ADT Corp.*, 161 F. Supp. 3d, 815, 825 (D. Ariz. 2016) (consumer fraud requires showing of damages). Although the jury checked the line next to "Liable" for Spring Ridge on constructive fraud (Count I(C)), and for Deily on consumer fraud (Count II(B)), it awarded zero damages for both, necessarily finding that Plaintiff had failed to prove an element of both claims.

Accordingly, when the Court enters the Final Judgment, it should provide that judgment is in Defendants' favor in connection with Counts I(C) and II(B). Fed. R. Civ. P. 59(e).

### III. The Court should enter judgment as a matter of law under Rule 50(b) for both Defendants on Plaintiff's fraud claims (Counts I and II).

The Court may enter judgment as a matter of law if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party," Fed. R. Civ. P. 50(a), and a party may renew its motion for judgment as a matter of law after trial with the court having had the benefit of hearing all of the trial evidence. *See* Fed. R. Civ. P. 50(b) (if the court denies the Rule 50(a) motion, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion"). Judgment as a matter of law is proper "if the evidence, constructed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Castro v. City of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (internal quotations and citation omitted). Here, Plaintiff failed to proffer evidence from which a reasonable jury could find all the necessary elements to prove fraud under either Count I or II. Fed. R. Civ. P. 50(b).

#### A. Spring Ridge cannot be liable on Plaintiff's actual fraud claim (Count I(A)) because Kate Deily was found "not liable."

"A corporation is an impersonal entity which can act only through its officers and agents." *Miller v. Arnal Corp.*, 129 Ariz. 484, 491 (App. 1981). In addition, "where one defendant would be liable for committing the act and the other solely by operation of law, a finding that the first is not liable requires that the second be free from liability." *Wiper v. Downtown Dev. Corp. of Tucson*, 152 Ariz. 309, 311 (1987).

Here, Spring Ridge's liability is based entirely on Plaintiff's interactions with Deily prior to her enrollment decision. Spring Ridge acted only through Deily in this process. There was no evidence at trial that any other Spring Ridge employee or agent made any

(alleged) misrepresentation or omission. Because Deily was found "not liable" for actual fraud and no other agent could have create liability for Spring Ridge on this claim, the Court should grant judgment as a matter of law on Plaintiff's actual fraud claim (Count I(A).)

> **B. There is insufficient evidence that Spring Ridge engaged in actual fraud related to Plaintiff's enrolling her daughter - Count I(A).**

There are nine elements for a claim of actual fraud under Arizona law, including a "representation," "its falsity," and the "speaker's [awareness] of its falsity or . . . ignorance of . . . its truth . . . ." *Taeger v. Cath. Fam. & Cmty. Servs.*, 196 Ariz. 285, 294 (App. 1999). Each must be proven by clear and convincing evidence. *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 343 (App. 1983). Plaintiff failed to provide sufficient evidence for these elements.

First, there is insufficient evidence that Spring Ridge made "false" representations about its methodologies or workshops. As explained in Defendants' Rule 50(a) motion (Doc. 263 at 2-6), Plaintiff based her fraud claim largely on the allegation that Defendants misled her in the enrollment process about Spring Ridge's use of Post Induction Based methodologies and the Teen Challenge and Parent Challenge workshops. (*See* June 6, 2024, a.m. Trial Transcript at 43:8-11, excerpts attached hereto as **Exhibit 2**.) But the evidence presented to the jury showed that Spring Ridge informed Plaintiff before enrollment about the nature and details of its program, including about:

- the use of "experimental seminars" (Trial Exhibit 40 at 2).

- parental participation "in the Parent Challenge and the Family Trainings all of which are key elements of the program" (*id.*; Trial Exhibit 7 at 5, 7–8).

- the use of "Post Induction Therapy" and other "<u>experiential education student workshops</u> and experiential education parent workshops" (*id.*; June 7, 2024, p.m. Trial Transcript at 45:17-46:18; 49:10-51:15; 79:11-15, excerpts attached hereto as **Exhibit 3**).

- the employment of therapy through a trauma-informed lens (*id.* at 69:1-4).

- that phone calls were monitored in the early phases of Spring Ridge's program (*Id*. at 72:6-13).

In addition, Plaintiff could have asked for further details or clarifications on these matters before enrolling her daughter. She did not. (*Id*. at 52:9-13, 52:21-24, 54:25-55:6, 85:2-22, 88:6-10). And Spring Ridge clearly advised of the use of such methodologies and did not make any misrepresentation about the workshops. Consequently, Plaintiff failed to establish with clear and convincing evidence the "falsity" of any "representation." *Taeger*, 196 Ariz. at 294.

Second, Plaintiff failed to prove by clear and convincing evidence that Spring Ridge had the requisite "awareness" of the falsity of the alleged misrepresentations "or ignorance of" their truth. In particular, Plaintiff failed to elicit evidence that Deily or anyone speaking on Spring's behalf did so with this required state of mind. With no clear and convincing evidence of this essential fraud element, the Court should enter judgment as a matter of law on Plaintiff's actual fraud claim.

In sum, Plaintiff failed to proffer evidence that would permit a reasonable jury to find satisfied each of the above essential elements. If the Court agrees on either of these, it should grant judgment as a matter of law on the common law fraud claim (Count I(A)).

**C.    There is insufficient evidence of a fiduciary relationship to support liability for constructive fraud - Count I(C).**

"A person commits the tort of constructive fraud when, in breach of a fiduciary duty to another, he misrepresents or fails to disclose a material fact and the other justifiably relies upon the misrepresentation or omission to his detriment." *Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1072. (D. Ariz. 2015). A plaintiff must establish every element of her "constructive fraud claim by clear and convincing evidence." *Id*. at 1074.

Constructive fraud requires "the existence of a fiduciary or confidential relationship," *Lasley v. Helms*, 179 Ariz. 589, 592 (App. 1994), "something approximating business agency, professional relationship, or family tie impelling or

inducing the trusting party to relax the care and vigilance [s]he would ordinarily exercise." *In re McDonnell's Est.*, 65 Ariz. 248, 252–53 (1947) *quoting* 37 C.J.S. Fraud § 2(2), pp. 213–14). The relationship much be marked by "great intimacy, disclosure of secrets, [or] intrusting of power." *Rhoads v. Harvey Publ'ns, Inc.*, 145 Ariz. 142, 149 (App. 1984). Although the existence of a fiduciary or confidential relationship is generally a question of fact, when there is insufficient evidence to prove such a relationship, the court must decide the issue as a matter of law. *Taeger*, 196 Ariz. at 291. The trial evidence would not permit a reasonable jury to find such a relationship between Plaintiff and Spring Ridge.

Instead, the evidence would only permit the jury to conclude that, when Plaintiff enrolled her daughter, Plaintiff and Spring Ridge had an arms-length relationship—no different from the hundreds of other prospective students that have approached Spring Ridge. Indeed, Plaintiff used an education consultant to help negotiate this process. (June 5, 2024, p.m. Trial Transcript at 12:7-14:24, 16:1-16, excerpts attached hereto as **Exhibit 4**.) Given the impersonal nature of their pre-enrollment relationship, any fiduciary relationship between Plaintiff and Spring Ridge could only have been formed *after* Plaintiff enrolled her daughter, not before. Plaintiff conceded as much in her closing argument, telling the jury that a fiduciary relationship "formed *as soon as* Kimberly Sweidy enrolls her daughter" and otherwise citing only acts that took place post-enrollment. (June 12, 2024, p.m. Trial Transcript at 25:08-10, excerpts attached hereto as **Exhibit 5** (emphasis added).)

This acknowledgement is fatal to Plaintiff's constructive fraud claim. Absent clear and convincing evidence of a fiduciary relationship *at the time of enrollment*--and there is none--the Court should enter judgment as a matter of law in favor of Spring Ridge on Plaintiff's constructive fraud claim, Count I(C).

…

…

…

8

**D.     There is insufficient evidence that Defendants made any misrepresentations necessary to prove consumer fraud – Count II.**

"The Arizona Consumer Fraud Act [] broadly prohibits fraudulent, deceptive, or misleading conduct in connection with the sale or advertisement of consumer goods and services." *Cheatham*, 161 F. Supp. 3d at 825. To recover for a violation under the Act, a plaintiff must prove by clear and convincing evidence a misrepresentation in connection with a sale or advertisement that caused them to suffer damages. *Id.*; A.R.S. § 44-1522(A).

As with her common law fraud claims, Plaintiff failed to prove that Defendants damaged her through deception, fraud, "or omission of any material fact . . . in connection with" her daughter's enrollment. Although Plaintiff alleged in her Complaint that "Defendants used deception in advertising and making representations that [their] therapy services [were] evidence based," and that Spring Ridge "was a college prep school and that the school provided family therapy" (Doc. 1 ¶ 716), she failed to present any evidence as to the falsity or deception of such representations. The uncontradicted evidence at trial was that certain Spring Ridge's therapy services were evidence-based (Trial Exhibit 7 at 5; June 6, 2024, p.m. Trial Transcript at 16:7-17:11, excerpts attached hereto as **Exhibit 6**; June 7, 2024, a.m. Trial Transcript at 22:7-17 ("it's saying that it uses a variety of interventions, and these are some of the ones it uses and that some of these are evidence based," excerpts attached hereto as **Exhibit 7**). Family therapy was offered, but Plaintiff refused to participate. (Trial Exhibit 311 at SRA 000730 ("mom doesn't want to do family sessions")).

Because there is insufficient evidence to support the jury's verdict, the Court should grant judgment as a matter of law on Plaintiff's consumer fraud claims, Count II.

**E.     The Court should vacate the punitive damage award due to insufficient evidence showing Spring Ridge acted with an "evil mind."**

The Arizona Supreme Court has made clear that "the extraordinary civil remedy of punitive damages" should be "restricted to only the most egregious of wrongs,"

*Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 332 (1986), such that one must prove "something more than the conduct required to establish the [underlying] tort." *Id.* at 332. "It is only when the wrongdoer should be consciously aware of the evil of his actions, of the spitefulness of his motives or that his conduct is so outrageous, oppressive or intolerable in that it creates a substantial risk of tremendous harm to others that the evil mind required for the imposition of punitive damages may be found." *Id.* at 330. Moreover, one must prove by clear and convincing evidence the defendant's "evil mind" and the element of "outrage similar to that usually found in crime." *Id*. at 332.

Proving this "evil mind" accordingly requires evidence "that the defendant was consciously aware of the wrongful or harmful nature of his conduct and nonetheless persisted in that conduct in deliberate contravention to the victim's rights." *Dawson*, 216 Ariz. at 111 ¶ 94. "The intent or deliberate indifference required to justify the additional imposition of punitive damages is focused on the harm to the plaintiff." *Id*. citing *Rawlings v. Apodaca*, 151 Ariz. 149, 162 (1986) (holding that "punitive damages are only recoverable under special circumstances").

Arizona courts have also emphasized that "punitive damages are not recoverable in every fraud case, even though fraud is an intentional tort." 151 Ariz. at 162, n.8; *Hunter Contracting Co. v. Sanner Contracting Co.*, 16 Ariz. App. 239, 246 (1972) (holding that punitive damages in fraud case require evidence of aggravated, wanton, reckless or intentional wrongdoing).

Here, Plaintiff needed to prove that Spring Ridge acted with an evil mind in connection with Plaintiff's enrollment of her daughter. On that question, there is no evidence—none—that Spring Ridge was consciously aware that it was engaging in harmful conduct and nonetheless persisted in that conduct "in deliberate contravention" of Plaintiff's rights. *Id*. Indeed, the jury found that Deily, the only person whose acts could have created liability for Spring Ridge, was not liable for any monetary damages. That finding alone negates the viability of a punitive damage award against Spring Ridge. *Dawson*, 216 Ariz. at 111 ("Any argument for punitive damages against a principal based

on the acts of an agent fails if the conduct of the agent does not rise to the level meriting punitive damages."); *Wiper v. Downtown Dev. Corp. of Tucson*, 152 Ariz. 309, 311 (1987). "If an employee's conduct does not warrant recovery of punitive damages against himself, it can not [*sic*] serve as a basis for such recovery against his employer.").

Unable to ascribe any malicious act to Deily, Plaintiff framed her punitive damage case as one premised on the Parent Manual's failure to alert Plaintiff to every single permutation of procedure and treatment that Spring Ridge employed with its students at large. (**Exhibit 5** at 33:07-39:13.) She also proffered evidence about others' experiences at Spring Ridge. But none of this would permit a reasonable jury to conclude that Spring Ridge "was consciously aware of the wrongful or harmful nature of" its conduct in the enrollment process yet "nonetheless persisted in" it while ignoring Plaintiff's rights. *Dawson*, 216 Ariz. at 111, ¶ 94. Simply put, none of that comes close to qualifying as punitive damages material under Arizona law.

At bottom, Plaintiff had the opportunity to muster evidence sufficient to meet Arizona's heightened standard. She failed, leaving this case like most cases, one that does not qualify for punitive damages. In fact, Arizona courts have correctly eliminated punitive damages in cases that involved significantly closer calls than this one. For example, in *Volz v. Coleman, Co.*, the Arizona Supreme Court vacated a punitive damages verdict in a tragic product liability case involving the injury of "five-year-old Shannon Haddix [who] was severely burned by ignited gasoline" when "a stream of fuel, without warning, ejected through the filler cap" of a defective camp stove. 155 Ariz. 567, 568 (1987). "Despite Coleman's knowledge of the possibility of fuel spraying through the vent hole of the filler cap, no warnings were issued advising the user" how to safely open the cap. *Id*. at 570. The jury returned a $1.06 million punitive award. *Id*.

The Arizona Supreme Court vacated that award, holding that the evidence did not satisfy Arizona's heightened "evil mind" standard, emphasizing that punitive damages require proof that the defendant engaged in "1) evil actions; 2) spiteful motives; or 3) outrageous, oppressive or intolerable conduct that creates substantial risk of tremendous

harm to others." *Id*. (citations omitted). Although the evidence demonstrated "negligence or even gross negligence," it lacked the "'something more' than gross negligence" necessary for punitive damages. *Id.*; *see also Piper v. Bear Med. Sys., Inc.*, 180 Ariz. 170, 180 (App. 1993) (vacating punitive damages award even though the jury could find that manufacturer failed to provide adequate warning of a dangerous product); *Filasky v. Preferred Risk Mut. Ins. Co.*, 152 Ariz. 591, 597 (1987) (defendant's "groundless position" did not suffice for punitive damages in insurance bad faith case); *Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, 517–18 ¶ 39 (App. 2006) (explaining that a "pattern of misconduct and disregard of the rights of the" plaintiff "without more" is "insufficient to support a claim for punitive damages") (internal quotation and citation omitted).

If these cases do not warrant punitive damages under Arizona's exacting standards, this case clearly does not. The Court should enter judgment as a matter of law in favor of Spring Ridge on Plaintiff's punitive damages claim.

**IV.     Alternatively, the Court should order a new trial for Spring Ridge.**

Federal Rule of Civil Procedure 59(a) provides for a new trial, which may be ordered when the verdict is against the weight of the evidence, the awarded damages are excessive, the trial was not fair to the moving party or to prevent a miscarriage of justice. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). The Court may weigh the evidence and credibility of witnesses when determining whether a new trial is warranted. *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010). The Court should, in the alternative, order a new trial here under Rule 59 and 50(c)(1) to allow for a just and fair verdict that is supported by the evidence and without excessive damages.

**A.     The Court should award a new trial as the verdict was contrary to the weight of the evidence.**

As explained above, there is not clear and convincing evidence that would allow Plaintiff's claims or the punitive damage award. Should the Court disagree, it should at a minimum order a new trial on those issues given the weight of the evidence.

**B.     The Court should award a new trial as the jury was tainted by extraneous information prejudicial to Defendants.**

As more thoroughly set forth in Defendants' Motion to Interview Jurors (Doc. 301), for at least two years before trial, Plaintiff regularly posted about matters related to this case on the social media platform Reddit under the subreddit (subsidiary thread) *troubledteens*. (Reddit screenshots, attached hereto as **Exhibit 8**.) Plaintiff continued to post on *troubledteens* in early 2024, including during the trial. (*Id.* at 4-11; Reddit printout attached hereto as **Exhibit 9**.)

Hours after the jury entered its verdict, a different user posted in the *troubledteens* subreddit about the verdict, noting the damage award and opining that this verdict "is huge validation." (*See* Reddit June 15, 2024, 2:54 p.m. print out at 1, attached hereto as **Exhibit 10**.) Plaintiff commented on this post and posted a photo of the verdict. (*Id.* at 2-3). The next day, someone posted under the username Brilliant-Truth-1365 that they were "proud to say I was part of the jury!" (*Id.* at 4). A different user questioned the propriety of a juror commenting on Reddit, stating: "What? How could you be a part of the jury? That does not seem right…" (*Id.* at 4). Brilliant-Truth-1365 deleted their comment the following day, summarizing the substance of their deleted post explaining that they had deleted it because "I was not going to get into any type of argument". (*See* Reddit June 16, 2024, 1:03 p.m. print out at 4, attached hereto as **Exhibit 11**.)

This link between a self-identified trial juror, Plaintiff, and a subreddit deeply connected to this case suggests that a juror was exposed to extraneous prejudicial information or outside influence, which would warrant a new trial. *Hard v. Burlington N. R. Co.*, 870 F.2d 1454, 1461–62 (9th Cir. 1989) (noting that exposure to extraneous information can be used to impeach a jury's verdict).[3]

…

…

---

[3] The present Motion will be supplemented by any additional information that becomes known to Defendants as a result of the Motion to Interview the Jurors or otherwise.

13

**C.     The jury verdict was tainted by significant irrelevant, prejudicial evidence.**

Over Defendants' Rule 402 and 403 objections (Doc. 190), Plaintiff offered the testimony of others' experiences at Spring Ridge. In denying Defendants' motion in limine to exclude evidence not directly related to Plaintiff's enrollment of her daughter, the Court found that it is "relevant as it goes to Plaintiff's claim as to whether Defendants' representations about the school were in fact false." (Doc. 215 at 20:26-27.) Despite this leeway, Plaintiff never connected this evidence to any purported false representation of fact about the school, let alone one material to her decision to enroll her daughter. Consequently, much of this evidence was not only irrelevant, but inflammatory and unfairly prejudicial. One former student even testified that, years prior to Plaintiff's enrolling her daughter, a former Spring Ridge teacher touched under her skirt. (June 4, 2024, p.m. Trial Transcript at 95:11-96:25, attached hereto as **Exhibit 12**). The jury should not have heard that. Another student testified about being raped prior to attending Spring Ridge and her criticisms of how a Spring Ridge therapist, who had no involvement with Plaintiff or her daughter, attempted to script reporting this rape to law enforcement. (**Exhibit 12** at 53:20-54:15). This was completely unrelated and irrelevant to Plaintiff's enrollment decision, much less any experience of Plaintiff's daughter, and intended solely to illicit an emotional response that would inflame the jury against Spring Ridge.

**V.     The punitive damages award is constitutionally excessive.**

A "grossly excessive" punitive damage award violates the Due Process Clause and should be reduced by the court to comport with due process. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 413, 418 (2003) (emphasizing the importance of "exacting appellate review"). In assessing whether an award is "grossly excessive," courts examine: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury

and the civil penalties authorized or imposed in comparable cases." *Id*. at 418 *citing BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).

Because there are no comparable civil penalties, the constitutional limit is determined by the "rough framework" model (*Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 962 (9th Cir. 2005)), under which the maximum permissible ratio depends principally on (1) the degree of reprehensibility of the conduct, and (2) the magnitude of the harm caused by the conduct (i.e., the $50,000 compensatory damages award in this case). The maximum permissible ratio is directly related to the former and inversely related to the latter. In other words, for any particular amount of compensatory damages, the lower on the reprehensibility spectrum the conduct falls, the lower the constitutionally permissible ratio.

In this case, Defendants' conduct, if punishable at all, falls at the lowest end of the reprehensibility spectrum such that if the Court does not vacate the punitive damages award, it should reduce that award to no more than $50,000–a 1:1 ratio.

**A.     Spring Ridge's conduct was not reprehensible.**

Courts consider five factors in assessing "the degree of reprehensibility": whether "[1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419. The "existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *Id*. This case lacks any of these factors.

First, there is no evidence of physical harm, only economic. Second, there is no evidence that Spring Ridge knew of or ignored safety risks to others in the context of its enrollment process. At most, the trial evidence would allow a jury to find that Spring

15

Ridge did not disclose the details of every possible treatment modality. Far more would be required here; at a minimum, that Spring Ridge knew that its program created healthy and safety risks. That, Plaintiff did not prove.

Third, there is no evidence of financial vulnerability. To the contrary, Plaintiff was and is financially well-off, and had her choice of therapeutic boarding schools. (**Exhibit 2** at 10:24-11:8, 13:3-14:11, 15:3-17:14; **Exhibit 4** at 12:7-13-21; June 11, 2024, p.m. Trial Transcript at 57:16-22, 58:10-59:5, attached hereto as **Exhibit 13**.) Fourth, there is no evidence that others claim Spring Ridge misled them in the enrollment process. And fifth, there is no evidence that Spring Ridge acted with intentional malice. Rather, Spring Ridge treated Plaintiff and her husband the same as every other family seeking enrollment, i.e., without any bad intent.

**B.     The jury's punitive award of a 50:1 ratio grossly exceeds the limit.**

The Supreme Court has explained that a punitive damages award that is a single-digit multiple of a compensatory damage award is "more likely to comport with due process while still achieving the State's goals of deterrence and retribution [while an] award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S at 425. Here, the jury awarded $2.5 million in punitive damages and $50,000 in compensatory damages, a ratio of 50:1, well beyond the constitutional line, even for cases with far more reprehensible conduct. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 974–76 (9th Cir. 2021) (affirming district court's reduction from 14.2 to 3.8 times to 1 ratio of punitive to compensatory damages where several reprehensible conduct factors were present); *Planned Parenthood of Columbia/Willamette Inc.,* 422 F.3d 949, 962–63 (approving ratio of 9 to 1 because defendants' conduct was "particularly reprehensible," including the "intent to intimidate those in the reproductive health services community by true threats of serious injury or death); *S. Union Co. v. Sw. Gas Corp.*, 415 F.3d 1001, 1009–10 (9th Cir. 2005) (vacating as constitutionally disproportionate punitive damage award 153 times greater than compensatory award).

    **C.    The Constitutional limit for punitive damages requires no more than a one-to-one ratio.**

The absence of reprehensibility renders any punitive damage "award suspect." *State Farm*, 538 U.S. at 419. Should the Court allow any punitive damage award to survive, due process requires that the award not exceed a ratio of 1:1 relative to compensatory damages. *Smith v. Olsen*, No. 1 CA-CV 22-0565, 2024 WL 2763440 (App. Div. I May 30, 2024) (reducing to 1:1 ratio award of punitive damages where intentional and repetitive conduct were offset by lack of financial harm); *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 230 Ariz. 592, 612, ¶ 100 (App. 2012) (reducing punitive award to 1:1 in part due to "low to, at most, moderate" reprehensibility); *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 503–04 (App. 2008) (reducing punitive award from 5:1 to 1:1 even where one or two reprehensibility factors were present).

## CONCLUSION

When the Court enters the Final Judgment in this case, it should correct the error in the Clerk's judgment and otherwise enter judgment in favor of Deily. The Court should also grant Spring Ridge judgment as a matter of law and enter Final Judgment in its favor. Alternatively, the Court should order a new trial for Spring Ridge on any surviving fraud claim and vacate the existing damages awards. If the Court does not vacate the punitive damages award, it should reduce the punitive award to no more than a 1:1 ratio.

RESPECTFULLY SUBMITTED this 15th day of July, 2024.

                    **OSBORN MALEDON, P.A.**

                    By <u>s/ Timothy J. Eckstein</u>
                        Thomas L. Hudson
                        Timothy J. Eckstein
                        Emma Cone-Roddy
                        2929 North Central, 20th Floor
                        Phoenix, Arizona 85012-2794

**GRASSO LAW FIRM, P.C.**

By <u>s/ Robert Grasso, Jr.</u>
   Robert Grasso, Jr.
   Robert J. Lydford
   Michael B. Smith
   2250 East Germann Road, Suite 10
   Chandler, Arizona 85286

Attorneys for Defendants Spring Ridge and Kate Deily