Mara C. Smith Allard (*pro hac vice*)
Allard Smith APLC
521977 Highway 79 # 648
Santa Ysabel, CA 92070-9601
SBN California 159294
Facsimile: (760) 683-6307
Email: mara@allardsmith.com
Telephone: (760) 448-6189

*Attorney for Plaintiff Sweidy*

Kimberly R. Sweidy (*pro hac vice*)
Kimberly R. Sweidy, Attorney at Law
3478 Rambow Drive
Palo Alto, CA 94306-3638
SBN California 120261
Facsimile: (650) 899-3336
Email: krsweidy@yahoo.com
Telephone: (650) 856-8595

*in pro per*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly R. Sweidy, | Case No. CV-21-08013-PCT-SPL |
| Plaintiff, | |
| v. | **PLAINTIFF'S REPLY TO DEFENDANTS SPRING RIDGE ACADEMY AND KATE DEILY'S OBJECTIONS TO BILL OF COSTS (DOCS. 289 AND 311)** |
| Spring Ridge Academy, an Arizona corporation, Jean Courtney, Suzanne Courtney, Brandon Courtney, Erin Smith, Leslie Filsinger, Justin Zych, Kate Deily, and Veronica Borges, | |
| Defendants. | |

Plaintiff Kimberly R. Sweidy Replies to Defendants Spring Ridge Academy (SRA) and Kate Deily's Objections To Plaintiff's Bills Of Costs (Docs. 289 and 311). Ms. Sweidy asks the Court to ***overrule*** Defendants' Objections or, alternatively, Ms. Sweidy moves to have all disallowed Non-Taxable Items included in Plaintiff's FRCP 54(d)

Motion For Attorneys' Fees and Costs (Doc. 292). Ms. Sweidy's Bill Of Costs and Motion For Attorneys' Fees and Costs strove to avoid confusing the Court with duplication (i.e., Ms. Sweidy *did not* ask for the same amounts twice); ***however***, they are to be ***read together as a complete accounting of Ms. Sweidy's expenditures***. Any item disallowed in the Bill of Costs is rightfully included in the Motion for Attorney's Fees and Costs.

## INTRODUCTION

Responding to Defendants' Footnote 1, Ms. Sweidy refers the Court to her Motion For Attorneys' Fees and Costs (Doc. 292 at 3:5), her Response (Doc. 306) To Defendant's Bill of Costs (Doc. 297), and her Response (Doc. 307) To Defendants' Bill of Costs (Doc. 303). ***Ms. Sweidy is the prevailing party. There can be only one prevailing party.***

Ms. Sweidy's Bill of Costs is filed pursuant to her successful Jury Verdict against SRA and Kate Deily.

## 1. PRO HAC VICE FILING FEES OF $100

Ms. Sweidy moves the Court to include this $100 for Pro Hac Vice Filing Fees in Ms. Sweidy's Motion For Attorneys' Fees and Costs. As explained in detail there, Ms. Sweidy rendered thousands of hours of free labor to the prosecution of this lawsuit, made possible by her pro hac vice status in this case.

## 2. FEES FOR PRINTED OR ELECTRONICALLY RECORDED TRANSCRIPTS

Ms. Sweidy brings to the Court's attention that Defendant Veronica Borges requested "Videographer Costs" in her Bill of Costs (Doc. 297 at 2:9). Ms. Borges removed that request in her Amended Bill of Costs (Doc. 310).

If the Court determines the video recordings are not included in Taxable Costs, Ms. Sweidy moves the Court to include this $11,018.58 amount in Ms. Sweidy's Motion for Attorneys' Fees and Costs. However, all video recordings were necessary to the prosecution of this Lawsuit. Ms. Sweidy and Ms. Allard were uncertain whether Defendants would take the stand at Trial; therefore, Ms. Sweidy and Ms. Allard (with the unpaid assistance of Kacey Baker and Lee Whitford-Stark, as described in Declaration

(Doc. 292-6, Exhibit 5)), produced eight individual edited Deposition Videotape files to play during Trial if any or all of the Defendants did not testify at Trial or claimed Fifth Amendment Privilege. Ms. Sweidy addresses the reasonableness and necessity of all Video Recordings of Depositions in her Declaration (Exhibit 1).

### 3. WITNESS FEES

Opposing Counsel Emma Cone-Roddy (Eight of Eight Attorneys paid for by PIIC), an individual who entered this case exactly two weeks *after* the Jury rendered its Verdict, opines on what is "reasonable" for a three week trial that she did not observe. ***This is the height of petty hubris and Monday morning quarterbacking.***

Ms. Sweidy is not clairvoyant. Ms. Allard is not clairvoyant. The two of them handled every detail of this Lawsuit for three and a half years, ***without the assistance of any staff***, much less the endless number of individuals paid for by PIIC, including six different Opposing Counsel attorneys prior to Trial, Noel Reddy, Grasso Law Firm's Director of Litigation Operations and Executive Paralegal to Mr. Grasso, who attended the entire Trial, as well as a Grasso Law Firm "IT Guy," who was reprimanded by the Judge for his inappropriate courtroom conduct.

***Ms. Sweidy, using her own money, arranged and paid for every detail and every witness of the Trial (and Lawsuit).*** Ms. Sweidy and Ms. Allard did not know how long any testimony (or any part of the Trial) would take. Ms. Sweidy and Ms. Allard did not know if the Defendants would even take the stand; therefore, they had a backup plan to play the videotaped recordings of Defendants' Deposition Testimony. ***The number of unknowns and moving parts to the Trial, all handled by Ms. Sweidy and Ms. Allard, were too numerous to count.*** And the Trial proceeded without interruption by Ms. Sweidy and/or Ms. Allard.

Defendants and Opposing Counsel were a completely different story. Until they actually took the stand at Trial, their attendance was uncertain. And once they took the stand, their Catastrophic Memory Loss and their collective behavior caused their testimony to drag on past any reasonable estimate. This resulted in the Judge holding yet

another sidebar to inquire if this was how Defendants acted in Deposition, to which Ms. Sweidy and Ms. Allard chorused, "Yes." The Judge understandably expressed concern over completing the Trial within the allotted time. Ms. Allard assured him that she would. ***And she did.***

Kelly Rudolf was finally served on the second day of Trial, May 29, 2024, at 1:24 PM MST (Exhibit 2), after repeated attempts over almost four weeks, at her place of business where she was eventually served. Mr. Smith then insisted (Exhibit 3) that Ms. Rudolf be allowed to testify the following week, which could not be accommodated, as Defendants' testimony was already dragging well into the next week, with Ms. Sweidy's Witnesses all set to arrive on Monday, June 3, 2024. Ms. Rudolf testified Friday, May 31, 2024, PM session. There were a myriad details handled constantly, including Ms. Sweidy coming on and off the Stand to accommodate Opposing Counsel's witnesses and scheduling, including a last minute request to bring back Defendant Filsinger from Hawaii and a last minute decision not to introduce Ms. Sweidy's Psychological Evaluation by Dr. Williams, which necessitated the cancelling of Dr. Randy K. Otto, Ms. Sweidy's Expert Rebuttal Witness.

***Because of Ms. Sweidy and Ms. Allard's foresight in planning and flexibility with all aspects of their Case, all of this was handled, as it should be, without involvement from or interruption to the Court.***

Starting in March of 2024, Ms. Sweidy began arranging every detail of every witness arriving from South Africa, the United Kingdom, Florida (accommodating the work schedule commitments of Dr. James R. Flens), Vermont, Texas, Washington, Oregon (accommodating the work schedule commitments and personal requirements of Dr. Janice K. Haaken, a professional of mature years), Arizona, and Florida/Las Vegas (accommodating the work schedule commitments of Dr. Randy K. Otto, Rebuttal Expert to Dr. Martin Williams). Troy Williams graciously handled all his own arrangements, while coordinating with Ms. Sweidy. There are no charges for Troy Williams on the Bill of Costs.

By purchasing flights well in advance, Ms. Sweidy insured the lowest possible prices, rather than the astronomical prices charged for last minute purchases and/or changes. The Percipient Witnesses agreed to stay in Phoenix for a slightly longer period of time, without compensation (or, in the case of Dr. Haaken, without additional compensation), to insure flexibility and eliminate all drama, trauma, and/or chaos (not to mention extra last minute expenses) that result from an unrealistic and unpredictable Trial time schedule based on specific dates and times for witness testimony.

Using Ms. Allard's and Ms. Sweidy's best efforts and best abilities, including Ms. Sweidy's dedication to thrift and cost minimization, Ms. Sweidy and Ms. Allard constructed the Trial Framework. And Ms. Sweidy dedicated herself to shielding Ms. Allard from all such details during Trial.

Ms. Sweidy planned for Yelinek, Hunter, Kerrigan, Morehead all to arrive within the same time frame on Monday, June 3, 2024, as Ms. Sweidy (from San Jose, CA) and Ms. Allard (from San Diego, CA) so they could carpool and save on transportation costs, as well as keep everyone organized and accounted for. While Ms. Allard Trial prepped at their Airbnb (located within one mile of the Courthouse), Ms. Sweidy shuttled witnesses back to own their own Airbnb (located around the corner from the Sweidy/Allard Airbnb) or the Home2Suites by Hilton (walking distance from the Courthouse). Witnesses Yelinek, Kerrigan, Morehead, and Adkins shared one Airbnb for four nights. This allowed for maximum flexibility in scheduling, which proved wise, as the Defendants' testimony dragged into Tuesday afternoon, while simultaneously proving less expensive than booking each witness an individual hotel room.

Ms. Sweidy planned for Yelinek (2:30 PM), Kerrigan (7:35 PM), Morehead (1:15 PM), and Adkins (10:15 AM) to all leave on Thursday during the day, according to available flights to Washington, the United Kingdom, Texas, and rural Vermont. Three of the flights left after the check-out time of 11:00 AM; therefore, while none of the individuals actually stayed Thursday night, because they were there during the day past check-out, the Thursday charge was incurred.

This insured that Ms. Sweidy and Ms. Allard had the flexibility of two full Trial days (Tuesday and Wednesday) in which to put all four witnesses on the stand, not even considering Troy Williams, Dr. Haaken, and Expert Witnesses.

***The price for four nights for four witnesses at one Airbnb, the cost of which is not divisible, was less than the cost for two nights for each of the four witnesses at the Home2Suites.***

The cost for four nights for four witnesses at one Airbnb was $841.76 (Doc. 289 Pages 108 and 112). Ms. Sweidy is honest and transparent. She informed the Court that $80 was refunded because the Airbnb was not cleaned prior to check-in.

The cost of two nights for four witnesses at the Home2Suites by Hilton would have been $1,351.08 (Doc. 292-5, Page 163). ***The alternative proposed by Defendants is $509.32 more than Ms. Sweidy's choice, which insured maximum flexibility with no drama, trauma, or chaos of trying to check witnesses from all over the world in and out of hotels while Ms. Sweidy and Ms. Allard were in Trial handling all the details of an unpredictable Trial.***

Defendants' request that $315.66 be removed from witness lodging based on the ***impossibility*** of using an Airbnb total that housed four people for four nights and, therefore, ***is indivisible***, is ridiculous, absurd, and petty.

Defendants add insult to injury by continuing their illogic and misrepresenting the law to the Court. Somehow, witnesses traveling from the United Kingdom and rural Vermont (as well as everyone else) are only entitled to two nights of lodging (as discussed above) and two days of partial food (the first and last days of travel being 75% of the full amount).

Defendants cite LRCiv 54.1(e)(4); 28 U.S.C. § 21 [sic] (which is actually 28 U.S.C. § 1821):

> (4) Witness Fees, Mileage and Subsistence. The rate for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821). Such fees are taxable even though the witness does not take the stand, provided the witness is in attendance at the Court. Such fees are taxable even though the witness attends voluntarily upon request and is not under subpoena. Taxable transportation expenses shall be based

on the most direct route at the most economical rate and means reasonably available to the witness. Witness fees and subsistence are taxable only for the reasonable period during which the witness is within the district. ... Fees for expert witnesses are not taxable in a greater amount than that statutorily allowable for ordinary witnesses. Allowance fees for a witness being deposed shall not depend on whether or not the deposition is admitted into evidence.

28 U.S. Code § 1821 - Per diem and mileage generally; subsistence for Phoenix, Arizona, is located here:

> https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-results?action=perdiems_report&fiscal_year=2024&state=AZ&city=Phoenix&zip=

In reality, this citation does not support Defendants' argument.  First, we will revisit the above issue of lodging (Exhibit 4).  For June, the daily rate for lodging is $110, excluding taxes.  Taxes are 12.57%.  Therefore, the daily lodging rate with taxes is $123.83.  Four witnesses for two days (an already debunked number) totals $990.64. ***This is $148.88 more than what Ms. Sweidy is claiming for four witnesses for a very reasonable four days.***

Four witnesses for four days, a very reasonable number to give adequate flexibility when planned months in advance to minimize total costs, including flights, and minimize logistical hiccups, is $1,981.28.  ***In other words, Ms. Sweidy obtained maximum value at a savings of the $1,139.52 when compared to the rate allowed under Exhibit 4 cited by Defendants.***

Second, we will visit the issue of meals (Exhibit 5).  The Meals Per Diem is prefaced with the following explanation:

> Meals & Incidentals (M&IE) rates and breakdown
>
> Use this table to find the following information for federal employee travel:
>
> M&IE Total - the full daily amount received for a single calendar day of travel when that day is neither the first nor last day of travel.
>
> Breakfast, lunch, dinner, incidentals - Separate amounts for meals and incidentals. M&IE Total = Breakfast + Lunch + Dinner + Incidentals. Sometimes meal amounts must be deducted from trip voucher. See More Information
>
> First & last day of travel - amount received on the first and last day of travel and equals 75% of total M&IE.

Defendants demand that all witnesses be paid for only two days total of food at first and last day 75% rates (including travel time from distant places) bringing the $69 a day rate to $51.75 a day ($103.50 total). Each of the four gets only $103.50 total, with a grand total of $414. But Defendants don't stop there. Kerrigan (from the United Kingdom) claiming $117.34 for actual four days (overage would be $13.84 with alleged two days) is apparently over the top even for Defendants, so no mention of her. But Defendants do object to Morehead (from Texas) claiming $112.85 for actual four days (overage claimed is $9.35) and Yelinek (from Washington) claiming $136.27 for four actual days (overage claimed is $32.77).

*In other words, this entire meals exercise, based on petty hubris and Monday morning quarterbacking, is all over $42.12, and then only after applying a 75% discount to both days.*

Because of Ms. Sweidy's extreme efforts and total efforts to address a thousand moving parts and avoiding many costs that could easily have been reasonably incurred, the total amount covering all these witnesses is ridiculously low. None of this is acknowledged by Defendants.

Opposing Counsel (not Defendants), paid for by PIIC, have made unfounded arguments regarding lodging. No reduction is allowed under the law cited by Defendants. *In fact, Ms. Sweidy, with double the lodging days (four) that Defendants arbitrarily decide is reasonable (two), comes in at $148.88 less than what is allowed for the two day lodging rate.*

*This entire discussion is over $42.12 total in food that Opposing Counsel claims is unreasonable for Yelinek traveling from Washington and Morehead from Texas using discounted first and last day rates of 75% of total daily allowance. Logically, the concept of first and last day discounted rates only applies if there are more than two days, and the regular daily allowance for just two days would have been $138 total each with no overage.*

What was Opposing Counsel paid (by PIIC) to craft this frivolous argument regarding

lodging and food? What is Ms. Sweidy's time worth to reply to this frivolous argument? What is the Court's time worth to read this frivolous argument?

Opposing Counsel Ms. Cone-Roddy has both a B.A. and a law degree (with Honors) from the University of Chicago, a world-recognized educational instruction. She also clerked for the Ninth Circuit Court of Appeals, among many other prestigious positions. These facts suggest that Ms. Cone-Roddy is well experienced and fully aware of the unsubstantiated nature of this request with which she wastes judicial resources.

***Ms. Sweidy requests that this Court remind Opposing Counsel of their duty to refrain from frivolous arguments, without basis in law, fact, or just plain common sense.***

Finally, Ms. Sweidy now learns from scrutinizing 54.1(e)(4) that various Expert Witness expenses for Dr. John Hunter and Dr. James R. (Jay) Flens could have been included in her Bill of Costs rather than including all expenses associated with Drs. Hunter and Flens in her Motion For Attorneys' Fees and Costs. At this time, Ms. Sweidy will not amend both her Bill of Costs and her Motion for Attorneys' Fees and Costs based on this new understanding. However, if the Court requires Ms. Sweidy to amend both her Bill of Costs and her Motion For Attorneys' Fees and Costs to move disallowed items from her Bill of Costs to her Motion For Attorneys' Fees and Costs, then Ms. Sweidy will, at that time, also claim allowed expenses for Drs. Hunter and Flens on her Bill of Costs rather than her Motion For Attorneys' Fees and Costs.

### 4. PRINTING FEES

Defendants rely on LRCiv 54.1(e)(5) and (e)(6):

> (5) Exemplification and Copies of Papers. The reasonable cost of copies of papers necessarily obtained from third-party records custodians is taxable. The reasonable cost of documentary exhibits admitted into evidence at hearing or trial is also taxable, including the provision of additional copies for the Court and opposing parties. The cost of copies submitted in lieu of originals because of the convenience of offering counsel or client are not taxable. All other copy costs are not taxable except by prior order of the Court.

Ms. Sweidy's Printing Costs are as follows:

$1,070.15 to Copy Factory for the printing costs of Trial Exhibits pursuant to Court Order (Docs. 168 and 168-1). Trial Exhibits supplied to Defendants electronically.

1  $287.75 to ABC Legal Services for the printing of the Summons and Complaint associated with Service upon nine Defendants.

3  $599.65 to Miscellaneous enumerated Vendors for the cost of copies of papers (or electronic records in lieu of paper copies) necessarily obtained from third-party records custodians for research associated with the prosecution of this Lawsuit.

6  $331.50 to Staples for Paper and Ink Only for Ms. Sweidy to print (from her own personal printer) copies of documents required throughout the prosecution of this Lawsuit by Court Orders (Docs. 22, 168, and 168-1) and used at Hearings on January 6, 2023, November 21, 2023, and Trial on May 28, 2024, through June 14, 2024.  This is a gross underestimate.

Total $2,289.05.

Ms. Sweidy does not understand Defendants' argument that any of these items should be disallowed.  Ms. Sweidy believes that all these items fall within LRCiv 54.1(e)(5).

Ms. Sweidy moves the Court to include any disallowed Printing Costs from this Bill of Costs in Ms. Sweidy's Motion For Attorneys' Fees and Costs.

## CONCLUSION

Ms. Sweidy asks the Court to overrule Defendants' Objections or, alternatively, Ms. Sweidy moves to have all disallowed Non-Taxable Items included in Plaintiff's FRCP 54(d) Motion For Attorneys' Fees and Costs (Doc. 292).

Respectfully submitted this 18th day of July, 2024.

/s/ Mara C. Smith Allard
Mara C. Smith Allard *pro hac vice*
**Allard Smith APLC**
521977 Highway 79 # 648
Santa Ysabel, CA 92070-9601
SBN California 159294
Facsimile: (760) 683-6307
Email: mara@allardsmith.com
Telephone: (760) 448-6189
*Attorney for Plaintiff Sweidy*

and

*Kimberly R Sweidy*

Kimberly R. Sweidy *pro hac vice*
Kimberly R. Sweidy, Attorney at Law
3478 Rambow Drive
Palo Alto, CA 94306-3638
SBN California 120261
Facsimile: (650) 899-3336
Email: krsweidy@yahoo.com
Telephone: (650) 856-8595
*in pro per*