Thomas L. Hudson, 014485
Timothy J. Eckstein, 018321
Emma Cone-Roddy, 034285
OSBORN MALEDON, P.A.
2929 North Central Avenue, 20th Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
thudson@omlaw.com
teckstein@omlaw.com
econe-roddy@omlaw.com

Robert Grasso, Jr., 015087
Robert J. Lydford, 030649
Michael B. Smith, 014052
GRASSO LAW FIRM, P.C.
2250 East Germann Road, Suite 10
Chandler, Arizona 85286
(480) 739-1200
rgrasso@grassolawfirm.com
rlydford@grassolawfirm.com
msmith@grassolawfirm.com
minuteentries@grassolawfirm.com

Attorneys for Defendants Spring Ridge Academy
and Kate Deily

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly R. Sweidy,<br><br>Plaintiff,<br><br>vs.<br><br>Spring Ridge Academy et. al.,<br><br>Defendants. | Case No: 3:21-cv-08013-SPL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO CORRECT A CLERICAL MISTAKE, MOTION FOR JUDGMENT AS A MATTER OF LAW, AND ALTERNATIVE MOTION FOR NEW TRIAL AND TO REDUCE THE PUNITIVE DAMAGES AWARD** |

Although Plaintiff believes she suffered general wrongdoing, her case went to trial on a few narrow legal theories with high burdens of proof. It is not enough that she could convince a jury that had she known in 2019 everything she knows now, she would have done things differently. Rather, to prevail, the law obligated Plaintiff to proffer clear and convincing evidence that Defendants fraudulently induced her to enter a contract that she otherwise would not have. That is, to prove that Defendants knowingly made material false representations or knowingly failed to disclose facts the law obligated them to disclose, and that *with that specific information* she would have never enrolled her daughter in Spring Ridge. The Motion (Doc. 318) demonstrated Plaintiff failed to do that, and her Response (Doc. 339) confirms this is so. For starters, as explained in § I below, Plaintiff failed to respond at all to three bases that entitle Defendants to some relief. Moreover, where she did respond, instead of (for example), identifying any specific witness testimony or exhibits that would have permitted the jury to find that Defendants knowingly made a particular false representation on which she relied *to enroll her daughter*, Plaintiff instead complains about (1) post-enrollment disagreements she had with Spring Ridge, (2) general programs and conditions, and (3) the experiences of other students. None of this bears on misrepresentations in the enrollment process about "the true nature of the [Spring Ridge] program," and none of it therefore suffices to sustain the verdict. (Doc. 166 at 6:27-28.)

On her punitive damages claim, Plaintiff made no effort to identify any evidence beyond that "required to establish the [underlying] tort," *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 332 (1986), let alone identifying anything qualifying as "the most egregious of wrongs." *Id*. Her effort to defend a ratio of more than 1:1 also falls flat upon scrutiny. The Court should grant the Motion.

I. **Plaintiff offers no response to three of the issues raised in the Motion.**

Plaintiff offers no response to three issues raised in the Motion, in particular that: (1) Spring Ridge cannot be liable for actual fraud because the jury found Kate Deily "not liable" for fraud, the only person who acted on Spring Ridge's behalf in the enrollment process; (2) there is insufficient evidence that Spring Ridge acted with an "evil mind" and

2

committed the "most egregious of wrongs" necessary to support a punitive damage award under Arizona law; and (3) a new trial is warranted based on the admission of irrelevant, prejudicial evidence concerning the sexual assault of one student and Spring Ridge not disclosing to law enforcement a different student's rape at another school.  (Doc. 318 at 5:19–6:4; 9:25–12:14; 14:1-19.)  Plaintiff's failure to respond to these arguments means the Court may assume she has no good argument in opposition.  *In re: Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, No. 18ML02814ABFFMX, 2020 WL 7220449, *4 (C.D. Cal., Oct. 26, 2020) (finding that plaintiffs' failure to response to JMOL arguments constitutes waiver).

## II. The parties agree that the Court should correct the clerical error in the judgment and enter judgment in Deily's favor for Count I.

As explained in the Motion (Doc. 318 at 4:1-18), the Court should correct the clerical error from its civil minutes (Doc. 273) that was incorporated into the clerk's judgment (Doc. 274), which error incorrectly imposed liability against Kate Deily on Count I(C).  Plaintiff appears to agree that the judgment should be amended due to an error.  (Doc. 338 at 2–3.)[1]  Rather than rewrite the entire judgment, as Plaintiff proposes (*id*.), the Court should resolve this error by correcting the second sentence to read: "Judgment is entered in favor of Plaintiff and against Defendant Kate Deily as to Counts I(C) and II(B)" when it enters final judgment after ruling on these motions.

## III. The Court should enter judgment in Defendants' favor on Counts I(C) and II(B).

Defendants have asked the Court to enter judgment in their favor based on the jury's failure to find that Plaintiff had proven damages – an element of both constructive fraud (Count I(C) against Spring Ridge) and consumer fraud (Count II(B) against Deily).  (Doc. 318 at 4:19–5:3.)  Plaintiff argues that this relief can only be in the form of a new trial

---

[1] In our Motion, Defendants mistakenly wrote that the judgment imposes liability on Deily in Count I(B) – on which she was found not liable – when it found her liable on Count I(C) – which does not involve her; it is a constructive fraud claim only against Spring Ridge.

3

order, or on appeal (Doc. 339 at 3). But this argument does not turn on the sufficiency of the evidence. Rather, because the jury found there were no damages, the verdicts against Defendants are legally improper. *Allied Erecting and Dismantling Co. v. United State Steel Corp.*, No. 4:12-CV-1390, 2016 WL 1059201 (N.D. Ohio, March 17, 2016) (amending judgment under Rule 59(e) where jury verdict was contrary to state law preventing non-performing party from recovering for breach of contract). There is no dispute that is what the jury found, and the only relief available is an entry of judgment under Rule 59(e). *Id*.

**IV.   The Court should enter judgment as a matter of law under Rule 50(b) for both Defendants on Plaintiff's fraud claims (Counts I and II).**

Defendants moved for judgment as a matter of law on Plaintiff's fraud claims because she failed to proffer evidence from which a reasonable jury could find all the necessary elements to prove fraud under either Count I or II. Fed. R. Civ. P. 50(b). (Doc. 318 at 5:19–12:14.) Plaintiff failed to respond to the substantive arguments raised in the Motion, instead providing the Court with twelve pages of evidence and argument presented at trial that is irrelevant to the fraud claim (Doc. 339 at 3-15).[2]

Among other things, Plaintiff cites repeatedly to the conduct of the Spring Ridge agents in whose favor the Court granted summary judgment[3], using their specific names and actions so many times one would have thought they were still parties to the litigation: Veronica Borges (32 times); Jean Courtney (19); Suzanne Courtney (10); Brandon Courtney (2); Erin Smith (19); Leslie Filsinger (11); and Justin Zych (4).

---

[2] Plaintiff purports to "renew[] all objections made on the record" to Defendant's Rule 50(a) motion (Doc. 263). In fact, Plaintiff made no objections to that motion when filed, as the Court denied it without argument from either party. (June 12, 2024, a.m. Trial Transcript at 88:4-89:21 attached hereto as **Exhibit 1**.)

[3] The Court granted summary judgment in favor of Veronica Borges, Jean Courtney, Suzanne Courtney, Brandon Courtney, Erin Smith, Leslie Filsinger, Justin Zych, finding that Plaintiff's allegations against them for misrepresentation and concealment concerned only what they did post-enrollment, and therefore "had nothing to do with Plaintiff's decision to enroll her Daughter at [Spring Ridge] in the first place, i.e., the actionable conduct at issue in this fraud claim." (Doc. 166 at 8:25-27.)

Plaintiff further cites to evidence of *post-enrollment* conduct or evidence concerning other students that, whether it might support a negligence or standard of care claim, is untethered to a materially false statement or omission *in the enrollment process*, including:

- Deily's use of "discipline rituals" and "interrupt[ing] a phone call between a student and her mother" (Doc. 339 at 8:20-27)
- Suzanne Courtney's failure to release Plaintiff's daughter during the early days of the COVID pandemic and provision of a "statement" that Plaintiff's husband used in a family court proceeding (*id*. at 9:26–10:13)
- Spring Ridge and Erin Smith withholding from Plaintiff and providing to a California family court certain "confidential records" (*id*. at 10:14-21)
- Veronica Borges keeping from Plaintiff information regarding her daughter's "health and welfare" and failing to remove herself as "family therapist" despite a conflict with Plaintiff (*id*. at 10:25–11:15; 12:22-26)

Decisively, none of this would permit a reasonable jury to find by clear and convincing evidence that Defendants knowingly made a representation or omission in connection with Plaintiff's enrollment of her daughter. *Taeger v. Cath. Fam. & Cmty. Servs.*, 196 Ariz. 285, 294 (App. 1999) (setting forth fraud elements). In short, when given the opportunity to cite clear and convincing proof that Defendants had defrauded her in the enrollment process, Plaintiff was unable to do so.

**A.   There is insufficient evidence that Spring Ridge engaged in actual fraud related to Plaintiff's enrolling her daughter - Count I(A).**

Defendant Spring Ridge showed in the Motion that it is entitled to judgment as a matter of law on Plaintiff's actual fraud claim (Count I(A)) because the trial evidence would not permit a reasonable jury to find that any Spring Ridge agent (1) made any materially false representations or omissions in connection with the enrollment process of Plaintiff's daughter, or (2) was aware of any false representation or omission in that process. (Doc. 318 at 6:7–7:17.) Plaintiff's response (Doc. 339 at 4-7) confirms the Court should grant JMOL. Rather than identify evidence relevant to *these* elements – ones the

5

law required her to prove at trial – she instead cites to (1) communications from Deily "that the therapy was clinically sophisticated[4]," (2) statements on Spring Ridge's website and in the Enrollment Agreement that Spring Ridge was licensed, and (3) a lack of detail and history for various workshops and treatment modalities. As explained in the Motion (at 6:13–7:8), Spring Ridge provided thorough disclosures regarding its clinical program and workshops; whatever gaps may have existed there did not render those disclosures fraudulent. Further, Plaintiff fails to cite to any evidence that Deily or any other Spring Ridge agent was aware of any falsity regarding any of these statements. (*Id*. at 7:9-17.)

### B. Plaintiff fails to cite to evidence of a fiduciary relationship to support liability for constructive fraud - Count I(C).

There is insufficient evidence, as a matter of law, that would support the finding that Spring Ridge had a fiduciary duty to Plaintiff, as is required to sustain a claim of constructive fraud. (Doc. 318 at 7:20-23 *citing Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1072 (D. Ariz. 2015)). A fiduciary relationship only exists when there is "great intimacy, disclosure of secrets, [or] intrusting of power." *Rhoads v. Harvey Publ'ns, Inc.*, 145 Ariz. 142, 149 (App. 1984). The evidence is clear that, *at the time of enrollment*, there was no such relationship, only an arms' length transaction that exists in any sort of school enrollment; both parties have imperfect information, the school about the child and her family, and the child and her family about the school. (Doc. 318 at 8:10-25.)

Plaintiff cites to *Taeger*, 196 Ariz. at 285, for the proposition that "the very nature of the placement of a minor child" led Plaintiff to place trust in Spring Ridge such that it took over her role "as parent on health education and welfare decisions for her minor child." (Doc. 339 at 14:10-16.) *Taeger* says no such thing, nor does Plaintiff cite to a case holding that a school took on a fiduciary duty to a parent (not the child), let alone did so in the enrollment process. *Taeger* concerned an adoptive parents' relationship with an adoption agency, where the court held allowed the jury to decide whether a fiduciary relationship

---

[4] At most, "clinically sophisticated" is a matter of opinion, and not a factual misrepresentation that could support a fraud claim.

6

existed, given that the agency "*knowingly became the sole source of information* about the child's background and led the adoptive parents to believe that it would provide all non-identifying background information." 196 Ariz. 285, 292 ¶ 17 (emphasis added). Unlike *Taeger*, Plaintiff was fully empowered to learn about Spring Ridge – through its published materials, potential discussions with other families, and her education consultant. That she may not have done so in no way changes the nature of that relationship.

### C. Plaintiff fails to cite to evidence that Defendants made any misrepresentations necessary to prove consumer fraud – Count II.

As the Motion demonstrates, there is insufficient evidence that Defendants damaged Plaintiff through deception, fraud, "or omission of any material fact . . . in connection with" her daughter's enrollment. (Doc. 318 at 9:3-24.) Lacking evidence, Plaintiff asserts that "all [Spring Ridge] agents in this Trial [sic] acted falsely to advertise [Spring Ridge] with their representations in the Parent Manual and silence and omissions regarding the inner workings of this cult." (Doc. 339 at 14:18-20.) By failing to cite to even a single piece of evidence, Plaintiff effectively concedes the lack of evidence supporting the jury's verdict.

## V. Alternatively, the Court should order a new trial for Spring Ridge.

If the Court does not order judgment as a matter of law, it should, in the alternative, order a new trial. Fed. R. Civ. 59, 50(c)(1).

### A. The Court should award a new trial as the verdict was contrary to the weight of the evidence.

There is not clear and convincing evidence that supports Plaintiff's claims or the punitive damage award. If the Court disagrees, it should order a new trial on those issues given the weight of the evidence.

### B. The Court should award a new trial as the jury was tainted by extraneous information prejudicial to Defendants.

Defendants are entitled to a new trial as the jury was tainted by extraneous information prejudicial to defendants through one self-identified juror's participation in subreddit – *troubledteens*. (Doc. 318 at 13:1-24.) The Court recently (Doc. 336) granted

Defendants' motion to subpoena Reddit for information relevant to this issue, reserving a ruling on Defendants' Motion to Interview Jurors (Doc. 301). If the Court grants judgment as a matter of law or a new trial for any reason, it may deny that motion as moot. If not, the Court should not rule on this new trial issue until after that evidence has been developed and the parties have been permitted to file supplemental briefing on that issue.

**VI.   The punitive damages award is constitutionally excessive.**

The jury's $2.5 million punitive damage award is "grossly excessive" and violates the Due Process Clause. (Doc. 318 at 14:21-24 *quoting State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 413, 418 (2003)). Spring Ridge's conduct was not "reprehensible" and the 50:1 difference between the punitive damage award and the $50,000 compensatory damage award renders the punitive damage award constitutionally excessive. (Doc. 318 at 15:17–16:28.) Any punitive damage award in this case should not exceed $50,000 (a 1:1 ratio). (*Id*. at 17:3-12.)

Plaintiff argues that, under *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996), the Court should consider the "state's interest in punishment and deterrence," implicated here by the Arizona Consumer Fraud Act and Arizona's recognition of the "importance of the parent-child relationship by recognizing a cause of action for loss of consortium with a minor child due to a third-party's negligence." (Doc. 339 at 15:19–16:16.) Plaintiff fails to account for Arizona *punitive damages* law, which holds that punitive damages should be "restricted to only the most egregious of wrongs," such that one must prove "something more than the conduct required to establish the [underlying] tort." *Linthicum,* 150 Ariz. at 331. Indeed, this is true for all intentional torts, including fraud. *Rawlings v. Apodaca*, 151 Ariz. 149, 162 n.8 (1986); *Hunter Contracting Co. v. Sanner Contracting Co.*, 16 Ariz. App. 239, 246 (1972). In other words, it is not the tort that matters, but the extreme nature of the conduct that goes beyond the mere tort.

Given Plaintiff's error, it is unsurprising that none of the four cases she cites – *In re Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026 (D. Ariz. 2018), *State of Arizona, ex rel. Mark Brnovich v. Insys Therapeutics, Inc. et al.*, 2017 WL 11640007, *Reben v. Ely*,

146 Ariz. 309 (App. 1985), and *Howard Frank, M.D., P.C. v. Superior Court of State of Ariz., In & For Maricopa Cnty.*, 150 Ariz. 228, 234 (1986) – involve a claim for punitive damages.[5] Her authority is irrelevant.

### A.   Spring Ridge's conduct was not sufficiently reprehensible.

As the Motion explained, *State Farm* set forth five "reprehensibility" factors to guide courts in their exacting scrutiny of punitive damage awards. (Doc. 318 at 15:17-22.) Because her case fails to satisfy any of those clearly stated and controlling factors, Plaintiff resorts to rewriting them, citing – and misciting – portions of *BMW* and other cases.

Plaintiff misstates the first factor as whether "the harm was purely economic in nature" (Doc. 339 at 16:21). In fact, the factor is whether "the harm caused was *physical as opposed to economic*," *State Farm*, 538 U.S. at 419 (emphasis added), and the *BMW* cite on which Plaintiff relies observed that the harm in that case was "purely economic." 517 U.S. at 576. There is, of course, no evidence of physical harm to Plaintiff, meaning the first factor weighs in favor of cutting the punitive damages award.

As for the second factor, Plaintiff asserts that Spring Ridge "and DEILY[6] showed extreme and callous disregard for the safety of parents and students who participated in their programming." (Doc. 339 at 17:6-7.) Plaintiff ignores here the Court's limitation of her claim to fraud in the *enrollment process*, relying instead on alleged "inappropriate [sic] bizarre and dangerous activities" that occurred *after* enrollment and were not tied to any representation made during enrollment. (*Id*. at 17:8-11.) This factor does not render Spring Ridge's conduct "reprehensible".

Plaintiff attempts to circumvent the lack of evidence of the third *State Farm* factor – her "financial vulnerability" – by citing to a non-controlling concurrence in *BMW* and inventing her own comparative financial vulnerability test. (Doc. 339 at 17:12-24.)

---

[5] Notably, Plaintiff chose not to assert a claim for loss of consortium.

[6] Against whom the jury awarded no compensatory or punitive damages.

Plaintiff's creation runs contrary to *State Farm*, 538 U.S. at 419. Moreover, there is no evidence that the now-defunct Spring Ridge has a superior financial position to Plaintiff.

Plaintiff amends *State Farm*'s fourth factor – "the conduct involved repeated actions or was an isolated incident" – to "the repetitive nature of the harm and the risk of recidivism" (Doc. 339 at 17:25-27). She then writes into *BMW* a "risk of recidivism" test, which she then seeks to bolster by citing evidence not presented to the jury about Deily's current employment,[7] and four other former Spring Ridge employees for whom the Court had previously granted summary judgment, insisting that "a high punitive damages award is needed to stop them from continuing to perpetrate harm . . . ." (*Id*. at 18:9–19:1.) Unable to accept that her case is only about fraud in the enrollment process, Plaintiff further alleges that "Defendants [sic] . . . ran their abusive workshops regularly, and repeatedly treated their clients with disrespect and contempt, [and their] fraudulent behavior . . . was not limited to a single instance [as they] continued to misrepresent their program to the California Family Law Court . . . ." (*Id*. at 18:1-6.)

Regarding the fifth factor, that "the harm was the result of intentional malice, trickery, or deceit, or mere accident," *State Farm*, 538 U.S. at 419, Plaintiff does precisely that which is not permitted under Arizona law – arguing that mere proof of fraud is sufficient to warrant a punitive damage award. (Doc. 339 at 19:7-12.) Although the jury found Spring Ridge liable for fraud in the enrollment process, there is no evidence that Spring Ridge acted with the "evil mind" required under Arizona law or the "intentional malice" necessary to comport with due process. This is a case where none of the factors establish "reprehensibility" necessary to allow for a high-ratio punitive damage award.

### B. The jury's punitive award of a 50:1 ratio grossly exceeds the limit.

The punitive damage award of $2.5 million, a 50:1 ratio of the compensatory damage award, is well beyond what the constitution permits, given the lack of reprehensible conduct and the moderate compensatory damage award. (Doc. 318 at 16:13-

---

[7] Against whom the jury awarded no compensatory or punitive damages.

28.) Under the Ninth Circuit's "rough framework" model, the constitutional limit is set by minimal degree of reprehensibility and the medium-sized award of compensatory damages. *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 962 (9th Cir. 2005) (adopting "rough framework" model where maximum ratio depends on reprehensibility and compensatory award).

      Plaintiff asserts that the $50,000 compensatory award "is a relatively low amount for a very egregious act, which justifies the higher ratio in this case." (Doc. 339 at 19:19-22 *citing Montes v. Duran*, No. 220CV00468MCSRAO, 2021 WL 6620702, *7 (C.D. Cal. Aug. 3, 2021) (upholding in an excessive force case with $235,000 in compensatory damages a ratio of 4.25:1 based on the jury's finding that the defendant acted with "malice, oppression or reckless disregard" to plaintiff's rights). This misstates the legal import of the compensatory award, which stands alone as evidence of the harm, as well as the trial evidence, which, at most, showed that one person was misled in enrolling her daughter in a school where she stayed for six months and where she suffered no harm, hardly the stuff of an egregious act such as physically injuring a civilian by excessive force.

      Plaintiff further argues that "the immense suffering [she] endured at the hands of [Spring Ridge] and DEILY[8]," "justified a higher ratio" because "[h]er relationship with her daughter has been forever severed . . . ." (Doc. 339 at 19:28–20:2.) In fact, Plaintiff elected not to produce evidence of her "immense suffering"[9]. Moreover, Plaintiff may

---

[8] Against whom the jury awarded no compensatory or punitive damages.

[9] Plaintiff failed to provide any evidence that she suffered "'severe emotional distress [] as a result of defendants' conduct . . . .'" (*Id*. at 25:5-6 *quoting Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1158 (D. Ariz. 2016)). Indeed, Plaintiff stated clearly that Defendants' acts "caused her to suffer only 'garden variety' emotional harm", that she "has no mental condition in controversy," that she "leads a productive, healthy and fulfilling life," and "is fortunate to be free of physical and/or psychological ailment." (Doc. 166 at 25:12-22.) As the Court correctly concluded, "*Plaintiff cannot have it both ways*," asserting "'garden variety' emotional damages in order to avoid a psychological examination during discovery, only to turn around and assert severe emotional distress sufficient to support an IIED claim . . . ." (*Id*. at 26:18-20) (emphasis added).

1 | repair her relationship with her daughter, and, in any event, there is no evidence that the rupture in her relationship was caused by any conduct that occurred during the enrollment process.

Plaintiff next argues that the Court should consider the potential harm, noting that "the damages she (and her daughter) suffered could have been far worse" had Plaintiff "not been such a zealous advocate." (Doc. 339 at 20:3-16 *citing In re USA Com. Mortg. Co.*, No. 2:07-CV-892-RCJ-GWF, 2013 WL 3944184, *27 (D. Nev. July 30, 2013) (affirming 0.3:1 ratio of $800,000 punitive damage award relative to $2.47M in actual or potential harm). Plaintiff again relies on Spring Ridge's post-enrollment conduct, and further does not cite to any evidence that her daughter suffered any harm or that her harm would have been more severe had her daughter not been removed from Spring Ridge.

Plaintiff further mischaracterizes evidence "of the violations they were committing" as putting Spring Ridge and Deily[10] "on notice," citing to evidence of licensing and programming issues, not evidence that Spring Ridge was repeatedly misleading anyone in the enrollment process. (Doc. 339 at 20:17-25.)

Plaintiff next attempts to justify the 50:1 ratio, citing *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003), which upheld a 37:1 ratio where a "motel company knew its rooms were infested to 'farcical proportions' with bedbugs but refused to pay a small fee to have them exterminated; it instead told employees to call them ticks and avoid renting infested rooms (unless the motel was full)." *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071 (7th Cir. 2019) (holding that *Mathias* ratio did not apply to case where compensatory award warranted 1:1 punitive damage award) (*citing Mathias*, 347 F.3d at 674–75). *Mathias* is exceptional in its high ratio and distinguishable from the present case in innumerable ways, including that: (1) Plaintiff's award is 1,000% higher than the $5,000 in *Mathias*, (2) the motel defendant for years rented rooms to customers despite knowing there was a bed bug infestation while there is no evidence that Spring

---

[10] Against whom the jury awarded no compensatory or punitive damages.

Ridge knew it had mislead any other parent in enrollment, and (3) the motel company "could not have rented any rooms at the prices it charged had it informed guests that the risk of being bitten by bedbugs was appreciable," *id*. at 675, where there is no evidence that Spring Ridge would have had to charge a different sum for tuition had it made more fulsome disclosures in the enrollment process.

### C. The Constitutional limit for punitive damages requires no more than a one-to-one ratio.

The absence of reprehensibility renders any punitive damage "award suspect," *State Farm*, 538 U.S. at 419, and, at a minimum, due process requires that an award not exceed a ratio of 1:1 relative to compensatory damages. (Doc. at 17:3-12.) Plaintiff is wrong that the facts or the law support any higher ratio, let alone one of 50:1. Every case on which Plaintiff relies involves no punitive damage award, one with a low ratio, or one where a defendant engaged in repeated conduct with multiple victims and/or that could have resulted in substantial harm. *See, e.g.*, *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462 (1993) (affirming $10 million punitive damage award where defendant engaged in a pattern of "fraud, trickery, and deceit," and "potential harm" to victims was between $1 and $8.3 million).

### CONCLUSION

The Court should grant the Motion, correcting the error in the Clerk's judgment, and otherwise enter judgment in favor of Deily and Spring Ridge. Alternatively, the Court should order a new trial for Spring Ridge on any remaining fraud claim and vacate the existing damages awards. If the Court does not vacate the punitive damages award, it should reduce the punitive award to no more than a 1:1 ratio.

RESPECTFULLY SUBMITTED this 12th day of August, 2024.

**OSBORN MALEDON, P.A.**

By s/ Timothy J. Eckstein
Thomas L. Hudson
Timothy J. Eckstein
Emma Cone-Roddy

13

2929 North Central, 20th Floor
Phoenix, Arizona 85012-2794

**GRASSO LAW FIRM, P.C.**

By s/ Robert Grasso, Jr.
   Robert Grasso, Jr.
   Robert J. Lydford
   Michael B. Smith
   2250 East Germann Road, Suite 10
   Chandler, Arizona 85286

Attorneys for Defendants Spring Ridge and Kate Deily