Mara C. Smith Allard (*pro hac vice*)
Allard Smith APLC
521977 Highway 79 # 648
Santa Ysabel, CA 92070-9601
SBN California 159294
Facsimile: (760) 683-6307
Email: mara@allardsmith.com
Telephone: (760) 448-6189

*Attorney for Plaintiff Sweidy*

Kimberly R. Sweidy (*pro hac vice*)
Kimberly R. Sweidy, Attorney at Law
3478 Rambow Drive
Palo Alto, CA 94306-3638
SBN California 120261
Facsimile: (650) 899-3336
Email: krsweidy@yahoo.com
Telephone: (650) 856-8595

*in pro per*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly R. Sweidy | ) Case No.: CV-21-0813-PCT-SPL |
| Plaintiff, | ) |
| vs. | ) **PLAINTIFF'S MOTION FOR** ) **CERTIFICATION PURSUANT TO** ) **U.S.C. § 1292(b)** |
| Spring Ridge Academy, an Arizona corporation, Jean Courtney, Suzanne Courtney, Brandon Courtney, Erin Smith, Leslie Filsinger, Justin Zych, Kate Deily, and Veronica Borges, | ) ) ) ) |
| Defendants. | ) ) ) ) ) |

Plaintiff Kimberly R. Sweidy respectfully moves for an order pursuant to 28 U.S.C. § 1292(b) certifying the Order on Defendants Spring Ridge Academy and Kate Deily's Motion for a New Trial (Doc. 318 [motion], 387 [order granting motion]) for appeal to the Ninth Circuit.

**INTRODUCTION**

The Court recently issued an order granting new trial (Doc. 387) (the "Order"). Ms. Sweidy seeks interlocutory appellate review of the Court's ruling, which presents a discrete legal question: What is the standard applicable to granting a new trial based on a juror's alleged exposure to prejudicial extraneous material? This Court found that there merely needs to be a "reasonable possibility" that the juror was exposed to extraneous information, whereas other courts have indicated that the moving party must prove that the exposure "in fact, occurred." *Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Service Co.*, 206 F.3d 900, 906 (9th Cir. 2000); *United States v. Dortch*, 696 F.3d 1104, 1110 (11th Cir. 2012).

Resolution of this issue could substantially affect the outcome of litigation. An immediate reversal of the Order would obviate the need for a new trial, reinstate the original verdict, and advance the ultimate termination of litigation. But a *delayed* (i.e., post-final-judgment) reversal would require the parties, witnesses, and jurors to needlessly partake in another taxing, emotional, and highly sensitive trial. This prejudice can be avoided by granting this motion—an especially efficient course of action given that the Ninth Circuit will already be reviewing the Court's recent grant of partial judgment (Doc. 389).

For these reasons, which are described more particularly below, Ms. Sweidy respectfully requests that the Court grant certification under 28 U.S.C. § 1292(b).

**STATEMENT OF FACTS**

On January 8, 2025, the Court granted Defendants Spring Ridge Academy and Kate Deily's Motion for a New Trial on the grounds of a juror potentially being exposed to outside information during deliberations. (Doc. 318). Notably, however, the Court acknowledged its uncertainty as to whether the juror in question was actually exposed to extraneous, prejudicial information:

> There is still a good deal of information the Court does not know. If Juror Number 3 indeed accessed Reddit on June 13, while deliberations were ongoing—and the Court suspects that Juror Number 3 did—it still does not know whether the Juror specifically accessed the Troubled Teens subreddit, what kind of posts they saw, and whether those posts had any bearing on their, or any other juror's, deliberations. The Court is satisfied that **if** the Troubled Teens subreddit was accessed, there is much more than a "reasonable possibility that the material could have affected the verdict."

(Doc. 387, emphasis added).

Despite this admission, the Court found the "possibilities are too great" that the jury may have been exposed to prejudicial outside information. (Doc. 387). For this reason, the Court granted the Motion, though it recognized the high price of a new trial, both economic and non-economic:

> Jury trials are financially taxing on all parties involved, from the parties bearing the attorneys' fees to the taxpayers bearing the cost of administration; they are often emotionally taxing as well, particularly in a case like this one, which involved sensitive testimony from numerous alleged victims.

(Doc. 387).

## ARGUMENT

A non-final order is subject to appellate review under 28 U.S.C. § 1292(b) if certification is obtained from both the district court and the appellate court. To obtain certification, the party seeking appellate review must demonstrate that:

> [T]he order not otherwise appealable under [section 1292] involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . .

28 U.S.C. § 1292(b).

Thus, to satisfy the certification requirements of section 1292(b), the moving party must establish "(1) that there [is] a controlling question of law, (2) that there [is] substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *See In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981).

1    Each of these requirements are met here.

2    **I.    The Order Involves Controlling Questions of Law**

3    "[A]ll that must be shown in order for a question to be 'controlling' is that resolution

4    of the issue on appeal could materially affect the outcome of litigation in the district court."

5    *In re Cement.*, 673 F.2d at 1026; *see also United States v. Woodbur*y, 263 F.2d 784, 787

6    (9th Cir. 1959) ("[W]e do not hold that a question brought here on interlocutory appeal must

7    be dispositive of the lawsuit in order to be regarded as controlling."); *Kuehner v. Dickinson*

8    *& Co.*, 84 F.3d 316, 319 (9th Cir. 1996) ("'[I]ssues collateral to the merits' may be the

9    proper subject of an interlocutory appeal.").

10    The question of law here concerns the appropriate legal standard for granting a new

11    trial based on a jury's alleged exposure to extraneous, prejudicial evidence. The Court relied

12    on *Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Serv. Co.*, 206 F.3d 900, 906 (9th Cir.

13    2000), where the 9th Circuit held the following:

14    > Where extraneous information is imparted, as when papers bearing
15    > on the facts get into the jury room without having been admitted as
     > exhibits, or when a juror looks things up in a dictionary or directory,
16    > the burden is generally on the party opposing a new trial to
     > demonstrate the absence of prejudice, and a new trial is ordinarily
17    > granted if there is a reasonable possibility that the material could
     > have affected the verdict.

18    *Sea Hawk Seafoods.*, 206 F.3d at 906, *see United States v. Maree*, 934 F.2d 196, 200-01 (9th

19    Cir. 1991); *see also United States v. Madrid*, 842 F.2d 1092, 1093 (9th Cir. 1988).

20    The Court also relied on *United States v. Vasquez*, 597 F.2d 192, 194 (9th Cir. 1979),

21    where the Ninth Circuit held that a party is "entitled to a new trial if there existed a

22    reasonable possibility that the extrinsic material could have affected the verdict." *Vasquez*,

23    597 F.2d at 193 (citing *Paz v. United States*, 462 F.2d 740, 745 (5th Cir. 1972), *Farese v.*

24    *United States*, 428 F.2d 178, 180 (5th Cir. 1970)).

25    Importantly, the Court did not make an express finding that Juror Number Three

26    accessed prejudicial information, much less that such information was imparted to any other

27    member of the jury. The Court, in fact, admitted that it "still does not know whether the

28    Juror specifically accessed the Troubled Teens subreddit, what kind of posts they saw, and

1  whether those posts had any bearing on their, or any other juror's, deliberations." (Doc.

2  387). This uncertainty notwithstanding, the Court granted the motion because "the

3  'possibilities are too great' that the jury may have been exposed to prejudicial outside

4  information." (Doc. 387).

5      The question, then, is whether the "reasonable possibility" standard articulated in *Sea*

6  *Hawk* and *Vasquez* applies to a *finding* that a juror (or the jury) was exposed to prejudicial

7  extraneous information, or whether it applies *after* such a finding is made, as to the question

8  of whether the prejudicial extraneous information could have affected the verdict? Ms.

9  Sweidy contends the latter is applicable. Her position is supported by ample precedent,

10  including *United States v. Dortch*:

11

12          When jurors consider extrinsic evidence, a new trial is required if the
            evidence poses a reasonable possibility of prejudice to the defendant.
13          A defendant who alleges denial of [the right to an impartial jury]
            resulting from juror exposure to extraneous information has the
14          burden of making a colorable showing that the **exposure has, in
            fact, occurred**. If the defendant does so, prejudice to the defendant
15          is presumed and the burden shifts to the government to show that the
            jurors' consideration of extrinsic evidence was harmless to the
16          defendant.

17  *United States v. Dortch*, 696 F.3d 1104, 1110 (11th Cir. 2012) (quoting *United States v.*

18  *Perkins*, 748 F.2d 1519, 1533 (11th Cir.1984), *United States v. Siegelman*, 640 F.3d 1159,

19  1184 (11th Cir.2011) (quoting *United States v. Ronda*, 455 F.3d 1273, 1299 (11th

20  Cir.2006)) (emphasis added) (internal quotation marks and citations omitted).

21      Ms. Sweidy's proposed appeal also presents a narrower question: What is the

22  evidentiary standard applicable to the factual issue of whether a juror (or the jury) was

23  exposed to prejudicial extraneous information? Is it the low threshold on which this Court

24  based its decision (i.e., "reasonable possibility"), a higher one (e.g., "preponderance of the

25  evidence"), or the highest standard (e.g., "clear and convincing" or "beyond a reasonable

26  doubt")?

27      There is no question that the low "reasonable possibility" standard was applied here,

28  nor is there any question that any higher standard would have precluded the motion from

1    being granted. The Court's expressed uncertainty as to whether "Juror specifically accessed

2    the Troubled Teens subreddit…" (Doc. 387) all but confirms that defendants failed to meet

3    their burden of establishing that "exposure has, in fact, occurred." Finding that extrinsic

4    exposure was "possible" is very different from finding it to have "in fact, occurred."

5         If it turns out that the motion for new trial was improperly granted, then the jury

6    verdict will be reinstated. An immediate appeal and reversal could prevent a second trial.

7    But without immediate appellate intervention, the parties, witnesses, and jurors will be

8    required to endure another highly taxing, triggering, and traumatizing trial—all, potentially,

9    for nothing.

10        Resolution of the controlling questions of law at this time would undoubtedly

11   advance the outcome of the litigation and could prevent the unnecessary, and highly

12   prejudicial, expenditure of significant time and resources on a second trial. To be sure, a

13   reversal after a new trial would provide no adequate remedy, as there is no way to unwind a

14   second trial or recover the time, money, and resources that would go into it. *Bittaker v.*

15   *Woodford*, 331 F.3d 715, 717-18 (9th Cir. 2003) ("If petitioner relies on the protective order

16   by releasing privileged materials and it turns out to be invalid, he will suffer serious

17   prejudice during any retrial. [] 'Appeal after final judgment cannot remedy the breach in

18   confidentiality occasioned by erroneous disclosure of protected materials. . . . [T]he cat is

19   already out of the bag. . . .'[] 'Once the Report was released, any error in releasing it would

20   be impossible to correct.'[ ] '[B]ecause [information], once revealed, could not again be

21   concealed, review following a decision on the merits would come too late.'") (internal

22   citations omitted).

23        Accordingly, Ms. Sweidy presents a controlling question of law under 28 U.S.C. §

24   1292(b).

25   **II.    The Order Involves a Substantial Ground for Difference of Opinion**

26        The Ninth Circuit has explained that a difference of opinion exists where: (a) the

27   appeal presents a novel issue on which fair-minded jurists might differ, or (b) courts that

28   have considered the issue are divided. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681,

688 (9th Cir. 2011); see *Couch v. Telescope Inc.*, 611 F.3d 620, 633 (9th Cir. 2010); *In re Cement*, 673 F.2d at 1026.

　　As indicated above, this Court declared that a new trial can be granted when there is a "reasonable possibility" that a single juror has been exposed to extraneous information. (Doc. 387). The Court's interpretation of the law is at odds with precedent indicating that a new trial is appropriate only when the moving party has established that the "exposure has, in fact, occurred." *Dortch*, 696 F.3d at 1110 (quoting *Siegelman*, 640 F.3d at 1182*; CGB Occupational Therapy, Inc. v. RHA Health Services Inc.*, 357 F.3d 375, 391 (3d Cir. 2004) ("In inquiring into allegations of juror misconduct, a district court must first establish whether or not extraneous information was introduced into jury deliberations, and then must make an objective assessment of how the information would affect the hypothetical average juror."); *U.S. v. Montes*, 628 F.3d 1183, 1187 (9th Cir. 2011) ("If a court determines that a juror has improperly brought extraneous information to the jury's attention, the inquiry must then focus on whether 'there is a reasonable possibility that the extraneous information could have affected the verdict.'") (quoting *United States v. Keating*, 147 F.3d 895, 900 (9th Cir. 1998)).

　　The division between the foregoing authorities and this Court's interpretation of the law establishes substantial grounds for difference of opinion under section 1292(b).

**III.　An Appeal Would Materially Advance the Litigation**

　　"[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation. *Reese*, 643 F.3d at 688 (quoting 28 U.S.C. § 1292(b)). "Reversal on appeal of a 'controlling question' may advance the termination of the suit in three ways: By leading directly to the entry of final judgment (or voluntary dismissal) upon remand, by preventing a reversible error which would require an entire new trial, or by preventing error which, while not reversible, protracts the litigation." Discretionary Appeals of District Court Interlocutory Orders: A Guided Tour Through Section 1292(b) of the Judicial Code, 69 Yale L.J. 333, 343 (1959); *see also U.S. Rubber Co. v. Wright*, 359 F.2d

784,785 (9th Cir.1966) (certification appropriate where it "might avoid protracted and expensive litigation").

As indicated above, immediate appellate review presents the only option that could save the parties from a potentially needless second trial. An interlocutory appeal is especially appropriate considering the Court's recent grant of partial judgment (Doc. 389), which Ms. Sweidy intends to appeal. Although there are many potential outcomes, if the Order is reversed and the partial judgment is affirmed, then the case will conclude without the need for a second trial.

In fact, delaying appellate review could result in a third trial if, for example, the second trial occurs during the pendency of the appeal as to the partial judgment, and the partial judgment is reversed on appeal, as the previously dismissed defendants will be brought back into the case.

In either scenario, it is far more efficient to resolve all appellate issues at once, especially given the sensitive nature of this case.

## CONCLUSION

For these reasons, Ms. Sweidy respectfully requests that the Court grant this Motion.

Respectfully submitted this 30th day of January 2025.

DATED: January 30, 2025

Kimbery R. Sweidy *pro hac vice*
Kimberly R. Sweidy, Attorney at Law
3478 Rambow Drive
Palo Alto, CA 94306-3638
SBN California 120261
Facsimile: 650-899-3336
Email: krsweidy@yahoo.com
Telephone: 650-856-8595
*In pro per*